THE STATE v. DRISCOLL.

1. **Criminal Law:** EVIDENCE: INTENT. In a trial for an assault with intent to commit murder, it is competent to inquire into a previous conversation of defendant respecting his intent in going to the place where the alleged crime was committed.

2. ———: ———: ———. Evidence that the defendant stated he was going to the scene of the alleged crime, where, under certain circumstances, he would make an assault upon another person than the one named in the indictment, is not competent.

3. ———: ———: INSTRUCTION. It was held erroneous to instruct the jury that such evidence might be considered, for the purpose of "more clearly" determining the intention of defendant.

*Appeal from Dubuque District Court.*

WEDNESDAY, SEPTEMBER 20.

INDICTMENT charging that defendant made an assault in and upon Dennis Ryan, with intent to kill and murder the said Ryan. Trial, verdict of guilty, and judgment sentencing the defendant to the penitentiary for the period of five years. Defendant appeals. The facts are sufficiently stated in the opinion.

*Pollock & Shields*, for appellant.

*M. E. Cutts*, Attorney General, for appellee.

SEEVERS, CH. J.—The evidence tended to show that the defendant, Flynn, and others, were in a saloon belonging to 1. CRIMINAL Flannery. The defendant asked for something to law:evidence: intent. drink and Flannery refused to let him have any, whereupon the defendant called Flannery "some pretty hard names and used bad language." Defendant was asked to leave the room, and a police officer was sent for. Ryan and Farrel, both policemen, came, and Flannery told Ryan "he wanted Flynn and defendant out of there." When Ryan went into the saloon, "defendant was standing quietly in the corner, and did nothing, except he went up to Ryan when Farrell went to put Flynn out." Ryan took hold of the defendant and gave him a push and he fell on the floor, and while he lay there he drew a revolver and pointed it at Ryan, and it was heard to "click." About half an hour previous to this, McNamara, a witness for the state, heard a conversation between the defendant and another party, on the street, and in reference thereto he was asked the following question: "Did you hear any conversation on the part of Driscoll, in regard to his going to Flannery's saloon at that time, and his object in going there? if so, state what it was." To this question the defendant objected, as incompetent and immaterial. This objection was properly overruled. There was nothing objectionable in the question, and the court could not anticipate or know that objectionable testimony would be elicited. However, in reply, the witness testified that the defendant said he "would go up to Flannery's, and if that nigger said anything to him, he would shoot him, or clean him out, or words to that effect; think he referred to the negro Flannery had for a barkeeper." No objection was made to this testimony, or motion made to strike it out.

The court instructed the jury as to certain evidence that might be taken into consideration, for the purpose of determining the intent of the defendant in drawing the revolver, and then proceeded to say: "For the purpose of *more clearly* showing the intent of the defendant herein, evidence has been admitted purporting to give his declaration as to what he would do under certain circumstances, in connection with a

colored man, who was a barkeeper at Flannery's saloon, and this you will take into consideration with the matters above, in arriving at the intent of the defendant, in this trial."

In so instructing the jury the court erred. The fact that, in a certain contingency, the defendant intended to attack the barkeeper and thereby commit a felony, had no tendency to prove the intent with which he made the assault on Ryan. There was no connection whatever between the conversation and the assault, except the single fact that the assault was made at the place referred to in the conversation.

It is urged by the Attorney General that the evidence tended to show that the defendant went to the saloon for an unlawful purpose, and with the intent to shoot the barkeeper, and hence it is claimed, as he became involved in a disturbance which the officer had been called in to quell, the jury could consider the intent with which he went to the saloon for the purpose of determining the intent with which the assault was made on the officer. The premises are undoubtedly correct, but we are unable to concur with the inferences, or conclusions deduced therefrom. It will not do to say the defendant intended to kill or murder the barkeeper, for such is not the fair meaning of his language; much less, then, can it be said to be evidence tending to show the intent with which he committed the assault on the officer. The defendant may have gone to the saloon for an unlawful purpose, and yet such fact not be evidence of the intent with which he assaulted Ryan.

Besides this, the court told the jury, in substance, that the evidence was admitted for the purpose of "*more clearly*" showing the intent of the defendant in committing the assault. That is to say, if the other facts referred to in the instruction are not sufficient evidence of the intent, or if it is clear, this circumstance will make it "more clearly" apparent. In this respect the instruction is also erroneous.

The judgment of the District Court is therefore

REVERSED.