STATE OF IOWA, Appellee, v. ANDREW H. SORENSON, Appellant.

Criminal law: BURGLARY: CIRCUMSTANTIAL EVIDENCE. Burglary is provable by circumstantial evidence; and while the mere entry of a building is not of itself proof of felonious breaking, it bears upon that question: Thus where the evidence showed that defendant was wrongfully in the building, that he was there for the purpose of committing larceny and did commit larceny, that the windows were closed and the doors locked, and that there was no opening through which he could have entered the building without a breaking, refusal to direct a verdict for defendant on the ground of failure to prove a breaking was proper.

Same. Where the state relied on circumstantial evidence to establish the breaking, it was permissible to show the condition of

the doors and windows, both immediately before and after the alleged burglary, for the purpose of showing that defendant could not have entered through them.

**Same.** The testimony of a witness that he entered the burglarized building immediately after the arrest of defendant as he was escaping from the building, by pushing in one of the doors, rendered the testimony of another witness to a like experiment unobjectionable, because subseqently made.

**Same:** EVIDENCE: SELF-SERVING STATEMENTS. Evidence that defendant stated prior to the commission of the crime that he was going to the burglarized building to see the manager was inadmissible as a self-serving declaration; in the absence of any circumstances rendering the same pertinent.

**Same:** BURGLARY: WHAT CONSTITUTES "BREAKING." Where the door of a building was so nearly closed that the accused could not enter without pushing the door further open, the wrongful entry of the building by thus pushing the door is burglary within the meaning of the law.
Evans and Weaver, JJ., dissenting.

**Same:** FLIGHT: KNOWLEDGE OF ACCUSATION: INSTRUCTION. Flight of an accused is a circumstance indicative of guilt only where he had actual knowledge of a suspicion or accusation against him; simply reason to know of such suspicion or accusation is not sufficient. The error of the instruction in this instance, however, is technical and without prejudice; as the alleged flight was so closely connected with the commission of the alleged offense as to render it admissible in evidence, regardless of the above rule.

**Evidence:** ADMISSION: DISCRETION. The discretion of the trial court in admitting evidence on rebuttal which was properly a part of the state's main case will rarely be interfered with on appeal.

*Appeal from Polk District Court.*—HON. CHARLES S. BRADSHAW, Judge.

TUESDAY, NOVEMBER 12, 1912.

THE defendant was indicted for burglary. He entered a plea of not guilty. A trial was had to a jury.' A verdict of guilty was rendered, and judgment entered thereon. Defendant appeals.—*Affirmed.*

*E. C. Mills* and *E. D. Perry,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,* Assistant Attorney-General, for the State.

EVANS, J.—The defendant was charged with burglariously breaking and entering a certain building or storehouse of the Maryland Packing Company, wherein goods and merchandise were kept for sale and deposit, with the felonious intent then and there to commit the crime of larceny. The alleged crime was committed about 10:30 p. m. on November 22, 1910. The storehouse contained a large amount of dressed poultry which were in course of preparation for the Thanksgiving trade. The employees of the packing company were at work in the building until about 10 p. m., and left at that time. The building in question was situated at the northwest corner of West Second street and Court avenue, in the city of Des Moines. It extended northward on the west side of Second street to an alley. At the north end of this building, and facing east and opening on the sidewalk on West Second street, was a large sliding door about twelve feet by twelve feet in dimensions. This sliding door was hung from, and rolled upon, an iron track on the inside of the building. When closed, the door fitted into a crevice or 'groove at the north end, and fastened by means of a hook, which attached the door to a staple in the jamb at the north end. At the south end of the door on the inside attached to the ceiling and running thence perpendicular to the floor was a large four by four post. This four by four post held the south end of the door in position, and the door slid between the wall and the four by four post. About two and one-half feet from the floor was a two by four firmly attached to the four by four post, and running thence parallel to the wall and floor southward along the inside of the east wall of the building, the south end of which two by four was fastened to a partition wall.

In opening or closing this door, the door was rolled upon the track through a narrow space, bounded on the east by the inside of the east wall of the building, and on the west by the vertical four by four post, and the horizontal two by four. The door was of two thicknesses of boards, and was three inches thick. The building also contained an office door opening on the same street, and near the southeast corner of the building. At the north end was a window opening on the alley. On the east side there were two or more windows opening toward the street. Within the building and in the north part thereof was a wire partition or coop for chickens. There were also a considerable number of dressed turkeys packed in barrels and covered. A small gaslight about "two-thirds lit" was burning in this part of the storehouse. We are unable to learn from this record whether this light was left burning by the employees of the packing company, or whether it was only discovered in connection with events relating to the defendant which will hereafter appear. One Miller, a "merchant police," observed the light in the storehouse. He went to the sliding door, and undertook to open it, but found that it was fastened from the inside. He stepped from the door to the alley, four or five feet distant, and while standing there the defendant suddenly opened the sliding door from the inside, and rushed out. Miller ordered him to "halt." But the defendant ran down the alley with Miller in pursuit. After shooting once over his head, Miller accomplished the arrest. Some dressed turkeys had been brought by the defendant as far as the door, and were left there when the race began. The manager of the packing company, who with the other employees had left the building shortly before, came to the building upon call of the police. Careful examination was thereupon made of all the windows and doors of the building in order to ascertain where and how the defendant had entered. No visible marks were discovered anywhere from which such fact could be directly ascer-

tained. One window was partly open, but the opening was covered with a wire lattice work which was undisturbed. On the trial the theory of the prosecution was that the defendant entered in some way through the sliding door. It was shown by testimony on the part of the state that such sliding door was fastened on the inside .by a hook and staple. It was also shown that on the night of the arrest and immediately thereafter it was discovered that the bottom of the four by four post against which the sliding door rested at its south end was loose, and that it "wiggled," that because of that it was possible to push the south end of the sliding door in to such an extent as to enable a person to crowd in through the opening thus made. Other evidence in the case will be noted in appropriate connection in the later discussion of the various features of the case.

I. At the close of the evidence, the defendant moved for a directed verdict on various grounds. The substance of them all was that there was not sufficient evidence of a breaking to warrant a submission to the jury. It is the argument that, because the state is unable to point out except by inference and conjecture the place where and the manner how the defendant entered the building, there is a total failure of proof of the *corpus delicti.* It must be conceded that the mere entry by the defendant is not of itself proof of a felonious breaking. Nevertheless, it is a very important circumstance as bearing upon that question. The crime of burglary, like any other, may be proved by circumstantial evidence. The circumstances relied upon by the state in this case are that the defendant was wrongfully in the building; that he was there for the purpose of committing larceny and that he did commit it; that all the windows were closed, and that both doors were fastened and locked; and that there was no opening left through which the defendant could have entered the building. If these circumstances were proven to the satisfaction of the jury, they were sufficient to war-

1. Criminal law: burglary: circumstantial evidence.

rant deduction therefrom by the jury that the entry must have been effected by a breaking. If it was proved that the defendant was in the building for a felonious purpose, and that there was no opening through which he could have entered, it was a fair inference of fact that he must have entered by breaking. It is not essential in a legal sense that there be found visible marks of a burglary in the form of broken locks or broken glass or uplifted windows. We find nothing contrary to this view in any of the many authorities cited by appellant's counsel at this point. Defendant's motion to direct a verdict was therefore properly overruled.

II. Objection was made by the defendant to the testimony of certain witnesses descriptive of the condition of the windows; the argument being that there is no evidence tending to show that the defendant entered through any of the windows. The very purpose of the evidence was to show that the condition of the windows was such that he could not have entered through them. The case of the state resting at this point wholly upon circumstantial evidence, it was clearly proper for it to show the condition of all doors and windows both immediately before and immediately after the alleged crime.

2. SAME.

III. One Vail was a witness for the state. He was the manager of the packing company. He, as well as Miller, testified to the discovery of the loosened condition of the four by four post at its lower end immediately following the alleged burglary. He also testified that on the afternoon or evening of the following day he experimented by pushing in the south end of the sliding door, and passing through the opening thus made. Objection was made to this evidence on the ground that it was too remote in time, and that there was no showing that the conditions remained the same as they were in the preceding night. It is also claimed affirmatively that the conditions were not the same in that the barrels and

3. SAME.

coops were piled up the night before against the horizontal two by four. It appeared, however, from the testimony of the witness Miller that this same experiment was made the night before, immediately after the arrest, and that it was so made by Vail. There is a conflict between the evidence of Miller and Vail at this point, in that Vail testified that it was in the evening of the next day that he passed through the opening. The conflict in the evidence at this point did not render the testimony of either witness inadmissible. It appearing from the testimony of Miller that the experiment was made immediately after the arrest, we can see no objection to further testimony that it was made, even though it contradicted the first witness as to the time it was made. The testimony of Miller, therefore, furnishes sufficient reason for the admissibility of that of Vail, and we need not consider the question whether the testimony of Vail upon that point would have been otherwise objectionable.

IV. The defendant offered to prove by the witness De Vinne that shortly before 10 o'clock the defendant told De Vinne that he was going down to the warehouse of the Maryland Packing Company to see Vail, the manager. This testimony was excluded on the objection of the state as being incompetent and self-serving, and defendant complains of such ruling. We think the ruling was proper. Appellant cites to us *State v. Driscoll,* 44 Iowa, 65. In that case statements made by the defendant were introduced in evidence against him by the state. In this case the defendant offered to prove his own previous statements in his own behalf. A state of the evidence might arise in a given case, where such evidence could properly be received as corroborative evidence only. It is not offered as such here. The defendant did not testify to any circumstance which made such a statement pertinent. Neither did he testify that he went to the storehouse for such purpose. He was not a witness in his own behalf. The only purpose of the

4. SAME:
evidence:
self-serving
statements.

offered testimony, therefore, was that it should be deemed as independent testimony of the intent of the defendant at the time of making such statement. This was "shortly before 10 o'clock."

If it had been admitted for that purpose, it could only prove that the defendant was not guilty of any crime or felonious intent up to that point of time. It was not claimed by the state that he was. Even if he had come to the 'building, with the intent only to see the manager, he was none the less guilty, if, after discovering the absence of the manager, he then formed the intent to break, enter, and steal. There was no error in this ruling of the trial court.

V. The defendant asked the court to give the following instruction: "The burden of proof is upon the state to prove beyond a reasonable doubt that on the night in question the north door of the building occupied by the Maryland Packing Company was closed. Unless you find beyond a reasonable doubt that at the time the defendant attempted to enter said building said north door was closed, your verdict will be for the defendant." This instruction was refused. The only instruction given by the trial court covering the point was instruction No. 6, as follows: "In order to constitute the crime charged, it is necessary that there be a breaking and entering of the building. You are instructed that, to constitute such breaking and entering, it is not necessary that any actual injury be done to said building. An actual breaking may be by lifting, removing, or displacing a latch, or turning a door knob in a door, or removing any part or portion of said building which is an obstruction to the entering of said building." There was some evidence introduced on behalf of the defendant and some elicited by cross-examination of the state's witnesses which might have caused the jury to entertain a reasonable doubt as to whether the sliding door had been fully closed when the employees

5. SAME: burglary: what constitutes "breaking."

left that night. The importance of this evidence was emphasized somewhat by the fact that it was conceded by the witness Vail, who was acquainted with the defendant, that he had had a conversation with the defendant at this building earlier in the day wherein he told him that he wanted to see him before he (defendant) left town, and that he would be at work at this plant in the evening until ten or eleven o'clock. Other instructions were asked by the defendant to the effect that, if the door were "partly open," a pushing of the same further open could not constitute a breaking. These were refused.

There is a conflict in the authorities on this question. The numerical majority of the cases favor the contention of the defendant to the effect, that, if a door be partly open, it is not a "breaking" to push the same further open. Indeed, the older cases were practically unanimous to this effect. *Commonwealth v. Steward,* 7 Dane, Abr. 136; *Commonwealth v. Stephenson,* 8 Pick. (Mass.) 354; *Commonwealth v. Strupney,* 105 Mass. 588 (7 Am. Rep. 556); *Rex v. Smith,* 1 Moody (Eng.) 178; *State v. Long,* 5 Ohio Dec. 617; *Timmons v. State,* 34 Ohio St. 426 (32 Am. Rep. 376); *May v. State,* 40 Fla. 426 (24 South. 498); *Smith v. Commonwealth* (Ky.) 128 S. W. 68 (27 L. R. A. (N. S.) 1023). See, also, cases collated in 6 Cyc. 174. In the later cases some of the courts have repudiated this rule as being unreasonable and illogical. The first of these cases appears to be *Murmutt v. State* (Tex. Cr. App.) 67 S. W. 508. This has been followed by *Claiborne v. State,* 113 Tenn. 261 (83 S. W. 352, 68 L. R. A. 859, 106 Am. St. Rep. 833); *People v. White,* 153 Mich. 617 (117 N. W. 161, 17 L. R. A. (N. S.) 1102, 15 Ann. Cas. 927). The majority of this court are disposed to follow the lead of the last cited cases, and to hold that, if a door be so nearly closed that the accused could not enter through the opening without pushing the door further open, then such pushing will constitute a "breaking" within the meaning of the law.

The minority, including Justice Weaver and the writer hereof, are disposed to concede the force of logic in the majority view. In view, however, of the great weight of previous authority to the contrary, they think that the present holding savors somewhat of the *ex post facto.* It has always been in the power of the Legislature to adopt a definition of "breaking" in accord with the present holding, but it has not done so. In section 4791 it did provide that an entry without breaking should be punishable where such entry was in the nighttime, and the building a dwelling house. In all other respects the definition of burglary is left to judicial decision. In view of the uniform judicial definition, so long followed by the courts and acquiesced in by legislatures, it is the minority view that an innovation ought not to be lightly adopted. On the other hand it must be said that no previous case is overruled by the present holding, and that some of the previous utterances of this court are somewhat suggestive of the direction now taken by the majority holding. *State v. O'Brien,* 81 Iowa, 93; *State v. Coonors,* 95 Iowa, 485.

VI.   In the tenth instruction the trial court dealt with the attempted escape of the defendant from the "merchant police" at the time of his escape. The instruction advised

6. SAME: flight: knowledge of accusation: instruction.

the jury that they were justified in considering such flight as a circumstance *prima facie* indicative of guilt, if the "defendant *knew or had reason to know* that the person from whom he ran was an officer of the law." The defendant complains particularly of that part of the instruction above italicized. The evident intent of the trial court was to state the rule which has heretofore been announced in some of our previous cases. *State v. Seymour,* 94 Iowa, 699; *State v. Poe,* 123 Iowa, 118; *State v. Hetland,* 141 Iowa, 524. The statement of such rule has usually been predicated upon at least two propositions: (1) That the defendant knew that he was accused or suspected of crime. (2) That he

fled to avoid arrest therefor. So far as the statement of such rule is concerned, we think that *actual* knowledge on the part of the defendant of the suspicion or accusation against him is essential as distinguished from mere *constructive* knowledge. In civil cases persons are often held, as a matter of law, to know that which they "had reason to know;" but such a rule has little application in a criminal case where the guilty mind is the gist of the offense. True it is that, if the facts were such as to give the defendant "reason to know" that Miller was an officer, a jury would be warranted in drawing the inference of actual knowledge. But, if the circumstances were not such that a jury could find *actual* knowledge therefrom, then it was not sufficient simply to show that he had "reason to know." Defendant's objection to this qualification is therefore well taken.

The error, however, is wholly technical, and without prejudice under the undisputed facts in the case. The alleged flight involved here was so closely connected in point of time with the commission of the alleged offense that it was clearly admissible in evidence regardless of the application of the rule to which we have referred. In other words, it was not necessary for the state to bring such circumstance within the rule indicated in order to render it admissible. If admissible, it had some tendency indicative of guilt. The weight of it was to be determined by the jury like that of any other circumstance and in the light of all the evidence in the case.

Some complaint is made of certain evidence which was permitted upon rebuttal, whereas it should have been introduced as a part of the main case. It is 7. EVIDENCE: admission: discretion. sufficient to say that the discretion of the trial court on such a question is not often interfered with here.

Other minor questions are argued. We discover no error in the record.

The judgment below must be—*Affirmed.*