STATE of Iowa, Appellee,

v.

Louis F. MITCHELL, Appellant.

No. 88–1464.

Supreme Court of Iowa.

Jan. 24, 1990.

Rehearing Denied Feb. 16, 1990.

Raymond E. Rogers, State Appellate Defender, and Shari Barron, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., James J. Koll, County Atty., and Robert Hansen, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN and ANDREASEN, JJ.

NEUMAN, Justice.

Defendant Louis Mitchell was charged with first-degree kidnapping for the alleged abduction and sexual abuse of a young woman from Denison, Iowa. Following a bench trial, the court concluded that the abduction was merely incidental to the crime of sexual abuse. Thus, Mitchell was convicted of second-degree sexual abuse and sentenced to a term of imprisonment not to exceed twenty-five years. *See* Iowa Code §§ 709.3(3) and 902.9(1) (1987).

On appeal, Mitchell contends that the crime of sexual abuse for which he has been convicted is not a lesser-included offense of first-degree kidnapping. He also asserts that evidence of a suicide attempt following his arrest should have been suppressed and that certain hearsay testimony was improperly admitted in evidence.

Our review of this criminal appeal is limited to the correction of errors at law. Iowa R.App.P. 4. We affirm.

I. *Background Facts and Proceedings.* The State produced evidence of a crime spree that took place over a nine-day period in five different states. In the interest of brevity, we shall relate in detail only those facts that are pertinent to Mitchell's conviction for a single incident of sexual abuse in Fort Dodge, Iowa.

On March 17, 1988, a dancer named Susan was working in Fort Dodge at a bar called Scarlett O'Hara's. As Susan was leaving the bar about 1 a.m., she encountered defendant Louis Mitchell in the parking lot. They exchanged casual conversation about whether Susan was finished dancing for the night. Susan got into her car and drove to the Eilers Motel where she was staying.

Mitchell was also staying at the Eilers Motel. He pulled into the parking lot just as Susan arrived. Again they exchanged conversation as they entered the motel. Later, while Susan was watching television in her room, Mitchell and his friend, Don Ochs, appeared at her door. Mitchell made introductions in the hallway. Then he and Ochs returned to their room.

Susan, meanwhile, was awaiting a phone call from her boyfriend and for a coworker to stop by for a haircut. At about 2 a.m. Mitchell returned, this time alone, and asked if he could talk to Susan for a while. Assuming that he was bored, Susan let him in. After a few minutes of watching television, Mitchell drew a sawed-off shotgun from under his jacket. He then grabbed Susan by the collar and took her at gun point down the hall to his room to "party" with him and Ochs.

In Mitchell's room, Susan was beaten about the head and face and forcibly raped by both Mitchell and Ochs. Susan sustained two black eyes and a bruised ear. Thereafter Mitchell returned to Susan's room to collect her belongings. Susan was

forced to leave the motel with Mitchell and Ochs at about 4:30 a.m. She was told that if she did not cooperate, she would be handcuffed and then thrown in the trunk of Mitchell's car.

Ochs drove Susan's car and abandoned it in Perry, Iowa. The trio then proceeded in Mitchell's car to Chadron, Nebraska, where they checked into another motel.

For the next nine days, Susan traveled with Mitchell and Ochs through Nebraska, Wyoming, Colorado and South Dakota before returning to Iowa. Susan testified that Mitchell told her that he and Ochs had killed others and would kill her too if she made any attempt to escape. During the trip, Mitchell and Ochs made brief stops to visit friends and relatives. When encountering others, Susan was told to shield her black eyes from sight or explain that they were the result of an "accident."

Upon returning to Iowa, Mitchell dropped off Ochs outside Fort Dodge. Mitchell then attempted to peddle a large quantity of stolen liquor and cigarettes through another friend, Don Allbee. While Susan was momentarily left alone with Allbee in Mitchell's car, she told him about her "predicament." Over defense counsel's objection, Susan was allowed to testify that Allbee told her Louis had mentioned "it" and Allbee suggested he might be able to help her. He thought he could divert Mitchell at some point so that Susan could get away.

That evening, while in a motel in Fort Dodge with Mitchell and Allbee, Susan made her getaway. Mitchell was sleeping soundly and Allbee reportedly "looked the other way." Susan ran to a farmhouse where she contacted authorities concerning her nine-day ordeal.

Mitchell was arrested two weeks later in Oklahoma City for a traffic violation. Mitchell gave the officer a false name. After running a check on the car's license plate number, the officer discovered that Mitchell was wanted for kidnapping. While sitting in the back of a squad car en route to jail, Mitchell slashed his wrists in an apparent suicide attempt.

In a lengthy and detailed opinion, the district court found that Susan's removal from her room to Mitchell's room in the Eilers Motel was incidental to the principal crime of sexual abuse and could not stand by itself as an independent act of kidnapping. The court further found that the subsequent act of leaving the motel and traveling west bore all the hallmarks of the asportation element of kidnapping—increased harm to the victim, easier escape for the perpetrator, reduced risk of detection—but because no further sexual abuse occurred within Iowa, the State failed to prove the intent element of the offense. See Iowa Code § 710.1 (defining kidnapping). Finally, the court could not find beyond a reasonable doubt that any sexual acts occurring in the other states were nonconsensual. Accordingly, the court acquitted Mitchell of kidnapping but found him guilty of violating Iowa Code section 709.3(3)—second-degree sexual abuse committed while aided and abetted by another person.

On appeal, Mitchell's principal contention is that Iowa Code section 709.3 is not a lesser-included offense of first-degree kidnapping. Mitchell also alleges prejudicial error in the introduction of evidence concerning his suicide attempt and the hearsay statements attributed to Don Allbee. We shall consider the arguments in turn.

■ II. *Lesser-included Offense.* At trial, Mitchell argued an "all or nothing" defense. Either his sexual contact with Susan was consensual and her travels with him voluntary, or they were not. Factually, there seems no dispute that if sexual abuse occurred at all, it was committed by Mitchell while aided and abetted by Don Ochs.

The question on appeal is whether second-degree sexual abuse as set forth in Iowa Code section 709.3(3) meets the *legal* test for a lesser-included offense of first-degree kidnapping under the standard announced in *State v. Jeffries*, 430 N.W.2d 728 (Iowa 1988). In a case predating *Jeffries*, this court held that second-degree sexual abuse *is* a lesser-included offense under the alternative charged. *See State*

*v. Whitfield,* 315 N.W.2d 753, 755 (Iowa 1982). Mitchell argues, however, that the elements of the two offenses are not congruent and that *Whitfield* cannot withstand scrutiny under the *Jeffries* analysis.

We confirmed in *Jeffries* the now-familiar "strict statutory elements" test which requires that the lesser offense be composed solely of some, but not all of the elements of the greater offense so that the greater offense cannot be committed without committing the lesser offense. *Id.* at 736. We make the lesser-included determination by putting the offenses side by side and comparing the elements. The crime of first-degree kidnapping charged in this case contains the following elements: confining or removing a person, without consent, with the intent to inflict serious injury or sexual abuse *and* intentionally subjecting the person to sexual abuse. Iowa Code §§ 710.1 and 710.2. The crime of second-degree sexual abuse contains the following elements: commission of a sex act by force or against the will of another person, aided or abetted by one or more other persons. Iowa Code §§ 709.1 and 709.3(3).

Mitchell claims that the latter element of second-degree sexual abuse—participation by an accomplice—is not present in kidnapping in the first degree and hence disqualifies the crime as a lesser-included offense. Mitchell seems to confuse, however, the *definition* of sexual abuse found in section 709.1 with the *elements* of various degrees of sexual abuse crimes under sections 709.2, 709.3, and 709.4. Under *Jeffries,* we compare the latter, not the former.

Iowa Code section 709.1 defines sexual abuse as any sex act performed by the participants (1) by force against the will of another or (2) with one who is mentally incapable of giving consent or (3) with a child. The various sex abuse crimes elaborate on this concept by degree. Thus first-degree sexual abuse requires proof of serious injury. *See* Iowa Code § 709.2. Second-degree sexual abuse, in addition to the accomplice alternative, may be established by proof that a weapon was used or threatened or one participant was under the age

of twelve. *See* Iowa Code § 709.3. Third-degree sexual abuse embraces the crime as defined in section 709.1, plus acts of incest.

All of these crimes are sexual abuse in one form or another. Contrary to Mitchell's suggestion, we are not convinced that the legislature intended only the most basic definition of sexual abuse to form the foundation for a first-degree kidnapping prosecution. Were we to accept such an argument, only the least serious sexual offense would elevate the crime of kidnapping to first degree, whereas the most serious offense of sexual abuse would not. We are unwilling to ascribe such an anomalous result to this legislative scheme.

We hold that the reference in the kidnapping statute to sexual abuse embraces all the various degrees of sexual abuse identified in chapter 709, including the crime of second-degree sexual abuse for which Mitchell has been convicted here. This decision is in harmony with decisions of this court predating *Jeffries. See, e.g., Lamphere v. State,* 348 N.W.2d 212, 218 (Iowa 1984); *State v. Ristau,* 340 N.W.2d 273, 274 (Iowa 1983); *Whitfield,* 315 N.W.2d at 758; *State v. Folck,* 325 N.W.2d 368, 375 (Iowa 1972). We perceive no change in the *Jeffries* analysis that would prompt us to retreat from this position. No reversible error appears.

■ III. *Evidence of Suicide Attempt.* In a pretrial motion in limine, Mitchell argued that evidence of his alleged suicide attempt was irrelevant and highly prejudicial. The court overruled the motion, finding the evidence admissible to show the defendant's consciousness of guilt. On appeal, Mitchell renews his challenge to this ruling by asserting that evidence of suicide, like evidence of flight, is admissible only upon proof that a defendant's behavior is prompted by awareness of an outstanding criminal charge. Assuming arguendo that Mitchell's analogy is correct,[1] it avails him nothing in the present case.

Susan's testimony revealed admissions by Mitchell that he was well aware of the potential for kidnapping charges arising

---

1. The only two cases upon which Mitchell relies for this proposition involved the propriety of instructing the jury on the issue of flight, not

the admissibility of flight evidence generally. *See State v. Bone,* 429 N.W.2d 123, 126–27 (Iowa 1988); *State v. Sorenson,* 157 Iowa 534, 543–44,

from Susan's abduction. Mitchell, on the other hand, attempted to portray the entire escapade as a vacation. Given these disparate views of the same incident, the trial court was well within its discretion to consider evidence of Mitchell's suicide attempt as bearing on his consciousness of guilt.

Our decision is supported by our rules of evidence and the great weight of authority. Evidence is relevant if it tends to make the existence of a fact more probable than not. Iowa R.Evid. 401. Courts in Iowa and elsewhere have found evidence of suicide attempts relevant to show the defendant's consciousness of guilt. *See, State v. Bittner,* 209 Iowa 109, 115–16, 227 N.W. 601, 604 (1929); *People v. Butler,* 12 Cal.App.3d 189, 193, 90 Cal.Rptr. 497, 499 (1970); *McKinney v. State,* 466 A.2d 356, 359 (Del. 1983); *People v. Campbell,* 126 Ill.App.3d 1028, 1053, 82 Ill.Dec. 39, 57, 467 N.E.2d 1112, 1130 (1984); *Pettie v. State,* 70 Md. App. 602, 609, 522 A.2d 394, 398 (1987); *State v. Ackerman,* 380 N.W.2d 922, 924–25 (Minn.App.1986); *State v. Plunkett,* 62 Nev. 258, 149 P.2d 101, 107 (1944); *State v. Brown,* 128 N.H. 606, 517 A.2d 831, 838 (1986); Annot. *Admissibility of Evidence Relating to Accused's Attempt to Commit Suicide,* 22 A.L.R.3d 840 (1968 & 1989 Supp.). We cannot say that the court abused its discretion in admitting evidence of Mitchell's suicide attempt.

IV. *Hearsay.* Mitchell's last appellate issue concerns Susan's testimony relating what Don Allbee said to her about a plan of escape. Mitchell claims this testimony was hearsay and the court erred by admitting it. The State counters that the testimony was admissible to show Susan's responsive conduct. The State has the better argument.

■ When an out-of-court statement is offered, not to show the truth of the matter asserted but to explain responsive conduct, it is not regarded as hearsay. *State v. Hollins,* 397 N.W.2d 701, 705 (Iowa 1986); *State v. Coburn,* 315 N.W.2d 742, 746 (Iowa 1982); *State v. Nowlin,* 244 N.W.2d 596, 600 (Iowa 1976). For a state-

ment to be admissible as showing responsive conduct, however, it must not only tend to explain the responsive conduct but the conduct itself must be relevant to some aspect of the State's case. *Hollins,* 397 N.W.2d at 705–06. In essence, the court must determine whether the statement is truly relevant to the purpose for which it is being offered, or whether the statement is merely an attempt to put before the fact finder inadmissible evidence. *Id.*

■ We are persuaded that the district court correctly determined that Allbee's statement was offered to explain Susan's responsive behavior and not, as Mitchell suggests, to prove the truth of Allbee's awareness that a kidnapping (the "situation") had occurred.

Allbee's statement explained behavior which related directly to the central factual dispute in this case: whether Susan was Mitchell's willing companion or a kidnapping victim. Throughout the trial, counsel for Mitchell emphasized opportunities for escape that Susan, willingly or unwillingly, appeared to forgo. Susan's credibility on this point was very much at issue. Mitchell claimed that Susan's failure to escape demonstrated her consent to stay with him. Thus it was incumbent upon the State to explain Susan's apparent reluctance to flee when the opportunity was presented.

Susan's immediate response to Allbee's plan was consistent with her prior conduct: she did nothing. The State used this evidence to corroborate the fact that despite opportunities for escape, Susan believed that she could not get away from Mitchell far enough or long enough to guarantee her safety. The court properly admitted the evidence to explain Susan's responsive conduct, for that conduct was a crucial part of the State's case against Mitchell. We find no error.

AFFIRMED.

138 N.W. 411, 414 (1912). The decisions in these cases are not dispositive of the issue be-

fore us.