# IN THE COURT OF APPEALS OF IOWA

No. 24-1956
Filed October 1, 2025


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEATON ROBERT LEACH,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for O'Brien County, Charles Borth, Judge.


        A defendant appeals his convictions for harassment in the first degree and stalking.  **AFFIRMED.**


        Alan R. Ostergren of Alan R. Ostergren, PC, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

Keaton Leach appeals his jury convictions of first-degree harassment and three counts of stalking.[1] On appeal, Leach argues there is insufficient evidence to identify him as the person who committed the crimes and that there is insufficient evidence to conclude a reasonable person would feel terrorized, frightened, intimidated, or threatened by his actions. He also claims the district court improperly admitted hearsay that is prejudicial. We affirm.

## I. Background Facts and Prior Proceedings.

Leach and A.J. met in late 2022 and began a romantic relationship in January 2024. Yet, by January 29, a no-contact order (NCO) was put in place protecting A.J. from Leach as he had become possessive and controlling according to A.J. Over the next several months Leach continued to communicate with A.J. In violation of the NCO, on February 21, Leach sent messages to A.J. In one message he said, "I can kill you whenever & however I want fyi." In another, Leach claimed, "I will tie you all up & make you watch your parents bleed out slowly.. you have no idea what I'm capable of but you will find out soon." A.J. was with one of her coworkers, who convinced A.J. to stay with her because she was concerned for A.J.'s safety. Leach called that coworker repeatedly and wanted the coworker to have A.J. call him. That same day A.J.'s parents demanded to speak with her because Leach allegedly sent A.J.'s mother an inappropriate video of him and A.J. Alarmed, A.J. reported this to the police, and Leach was charged with an

---

[1] Leach was acquitted of one stalking count involving a June 8 incident.

aggravated misdemeanor offense of harassment under Iowa Code section 708.7(1), (2) (2024).

The communications continued; on May 13, Leach sent more messages and made calls that A.J. reported to police. Leach messaged, "You'll be dead soon enough:)," "I know where you're at hehe," and "See you soon." One of A.J.'s coworkers overheard Leach threatening A.J. on the phone saying that "he was going to end her life and that it was going to be over soon."

Although A.J. told him to stop, Leach did not. On May 22, A.J. reported more messages from Leach and that he had made threatening account names on her media streaming account. A.J. testified Leach was the only other person who had access to her account. Some of these names were "Imma Gut You Like A Pumpkin," "Cant Wait To Ring Your Neck Whore," and "Wtchibg U Bleed Out Will B So Funny." On June 1, A.J. reported more media streaming account threats including "Ima Make Ur Death So Painful" and "I Can See Everything U Do.. Udedsoon." On June 8, A.J. alleged that Leach directed her to look at his music streaming profile by changing an account name on the media streaming platform. His music streaming profile picture was of someone holding a gun and his profile contained a song about domestic violence. The incidents in May and June resulted in four separate charges of stalking in violation of Iowa Code section 708.11(3)(a)(1).

A jury trial was held in October 2024. During trial, Leach objected to the admission of testimony relating to the video Leach allegedly sent to A.J.'s mother, claiming it was hearsay. The trial court allowed testimony related to the video. At the close of the State's case, Leach moved for a judgment of acquittal, claiming

(1) the State failed to identify the defendant during the State's case-in-chief; (2) the State failed to prove under Iowa Code section 708.11(3)(a)(1) that the defendant was served with the no contact order; and (3) the State failed to meet its burden of proof. The trial court denied the motion with respect to the first and third challenge. As to the second claim and how Leach had been charged initially, the trial court found no evidence in the record that Leach was served with the NCO and so the jury would only be instructed on the lesser-included offense under Iowa Code section 708.11(3)(c), without the enhanced penalty for failing to abide by an NCO.

Following trial, a jury found Leach guilty of harassment in the first degree, in violation of Iowa Code section 708.7(1), (2) and of three counts of stalking as an aggravated misdemeanor, in violation of Iowa Code section 708.11(2), (3)(c), stemming from the events on May 13, May 22, and June 1. The jury acquitted Leach of the stalking charge from June 8. Thereafter, Leach filed alternative motions for a new trial and a motion in arrest of judgment. The trial court denied both motions and sentenced Leach to four consecutive two-year terms on the aggravated misdemeanors, not to exceed eight years cumulatively. Leach appeals.

## II.     Standards of Review.

We review insufficient evidence claims for correction of errors at law. *State v. Copenhaver*, 844 N.W.2d 442, 449 (Iowa 2014). We generally review evidentiary rulings for abuse of discretion. *State v. Buelow*, 951 N.W.2d 879, 884 (Iowa 2020). But we review hearsay claims for correction of errors at law. *State v. Neitzel*, 801 N.W.2d 612, 621 (Iowa Ct. App. 2011).

### III.    Analysis.

Leach makes three arguments on appeal: (1) there is insufficient evidence to identify him as the person who committed the crimes, (2) there is insufficient evidence to conclude a reasonable person would feel terrorized, frightened, intimidated, threatened by his actions, or fear bodily injury or death, and (3) the district court improperly admitted hearsay that is prejudicial.

### A. Insufficient-Evidence Claims.

"In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, [we] consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016) (citation omitted). We do not resolve conflicts in the evidence, decide the credibility of witnesses, determine plausibility, or weigh the evidence; those matters are for the jury. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). "A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). "Evidence is substantial when the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018) (citation omitted).

### 1. Identification of the Defendant.

First, Leach claims the State failed to sufficiently prove his identity at trial. He points out that the identity of the defendant must be proved beyond "mere suspicion" or "speculation or conjecture." *State* v. *Miller,* 204 N.W.2d 834, 843 (Iowa 1973). "Identity is an element of a criminal offense which the State must

prove beyond a reasonable doubt." *State v. Jensen*, 216 N.W.2d 369, 374 (Iowa 1974) (citation omitted). The identification "of a defendant may be implicit or inherent in a record." *Id.* at 374–75; *see State v. Kardell*, No. 09-1859, 2011 WL 441961, at *8 (Iowa Ct. App. Feb. 9, 2011) (noting "a witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime" (citation omitted)). Additionally, "the failure of any witnesses to point out that the wrong man had been brought to trial can be eloquent and sufficient proof of identity." *Kardell*, 2011 WL 441961, at *9 (cleaned up). Here, at trial witnesses referenced the "defendant." Along with other references to "Mr. Leach" made by A.J., the State questioned A.J. and she testified to knowing the "defendant": "Q. And do you know the defendant, Keaton Leach? A. Yes. Q. How do you know him? A. He is my ex-boyfriend." Additionally, Officer Heemskerk testified that A.J. told him she received messages from "the defendant."

Moreover, "in-court identification is not necessary when the defendant's attorney himself identifies his client at trial." *Id.* (quoting *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995)).[2] During jury selection, Leach's counsel stated, "I'm a lawyer that offices in Des Moines, and this is Keaton Leach." *See State v. Robbins*, No. 16-1694, 2018 WL 1433525, at *5 (Iowa Ct. App. Mar. 21, 2018) (finding sufficient evidence of the defendant's in-court identity in

---

[2] Leach argues *Kardell* made a "serious mistake" by misquoting *United States v. Weed*, 689 F.2d 752, 755 (7th Cir. 1982), and that it cannot be relied upon for this proposition. But Leach misread *Kardell*, for this proposition a panel of our court did not rely on *Weed*—but cited *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995), where this quote appears verbatim.

part because the defendant's counsel referred to the defendant as his name to the jury prior to jury selection). We agree with the district court's finding "that the record as a whole certainly implicitly identifies that the alleged perpetrator was a person by the name of 'Keaton Leach.'" Upon reviewing the record, we conclude the State presented substantial evidence to support the identity element.

## 2. Stalking.

Next, Leach challenges the sufficiency of the evidence to support the stalking charges. Specifically, Leach maintains that the State failed to prove that his conduct toward A.J. made her feel frightened, or fear bodily injury to, or death of A.J. because of the nature of their relationship. But we look to the jury instructions to see what the State had to prove, which Leach did not challenge. Unchallenged jury instructions become the law of the case for purposes of our review of sufficiency of the evidence. *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020). Jury instructions for all the stalking charges required the State to prove:

> 1. On or about [date of charge], the defendant purposefully engaged in a course of conduct directed at [A.J.] that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened or to fear bodily injury to, or death of [A.J.].
> 2. The defendant knew or should have known that a reasonable person would feel terrorized, frightened, intimidated, or threatened or fear that the defendant intends to cause bodily injury to, or the death of, [A.J.] by the course of conduct.

*See* Iowa Code § 708.11(2). Given the elements, we examine if there was substantial evidence of a course of conduct that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened or to fear bodily injury to, or death. As related to the facts here, "course of conduct" means "repeatedly

maintaining a visual or physical proximity to a person without legitimate purpose or repeatedly conveying oral or written threats, threats implied by conduct or a combination of the two, directed at or toward [A.J.]." *See* Iowa Code § 708.11(1)(b). Leach only challenges that the State did not meet its burden of proof because A.J. did not corroborate that Leach's communications "made her feel terrorized, frightened, intimidated, or threatened, nor did she state she feared bodily injury or death." Leach acknowledges that the "State was required to prove an objective result of the communications of the defendant."[3]

The three stalking charges each stem from separate incidents occurring on May 13, May 22, and June 1. In reference to the May 13 charge, A.J. testified, "[Leach] was calling me nonstop, 1:00 in the morning to 4:00 in the morning, up until I was at work from 6:00 in the morning, telling me to kill myself over and over and over again, and I just could not handle it." A.J. answered affirmatively that she was concerned for her safety. Leach alleged to know her location. In other messages he sent, "If you're with a guy he is going to die. Idc if it's a cop LMAO," and that she would be "dead soon enough." Her coworker heard Leach say he was going to end A.J.'s life. We conclude this testimony and other evidence provides substantial evidence for the jury to conclude that Leach repeatedly directed actions at A.J. that "would cause a reasonable person to feel terrorized,

---

[3] Leach argues *State* v. *White*, 319 N.W.2d 213 (Iowa 1982) is controlling here and requires the State to prove that the actual effect of the stalking behavior on A.J. from the stalking behavior to support the elements of the charges. In *White*, the court applied a subjective standard and noted the proof required to support terrorism was "not whether the victim actually believed the threat would be carried out, but whether the actor so intended, and whether the actor's belief was reasonable." 319 N.W.2d at 215–16. While here, the objective "reasonable person" standard applies.

frightened, intimidated, or threatened." *Id.* § 708.11(2); *State v. Moyle*, No. 23-1235, 2025 WL 2057646, at *6 & n.11 (Iowa Ct. App. July 23, 2025) (holding "[t]he jury could find that a reasonable person would fear physical harm under these circumstances" in part because the defendant's "text messages added another layer of intimidation. . . . [A]mong other texts, [the defendant] wrote . . . 'I refuse to recognize the authority of any judge in this district.'").

Next are the charges stemming from May 22. A.J. testified that Leach messaged her, called her, and had made account names on her video streaming account. The messages included "Pathetic skank ahaha why aren't you dead yet?" and "Say your goodbyes . . . fat skank." A.J. testified that she was scared by some of the account names, a few of the names were "Imma Gut You Like A Pumpkin," "Ill Be At Ur House Soonish," "Cant Wait To Ring Your Neck Whore," and "Wtchibg U Bleed Out Will B So Funny." She again testified that she was concerned for her safety. We conclude this testimony, and other evidence provides substantial evidence for the jury to conclude that Leach repeatedly directed actions at A.J. that "would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened."

Lastly, regarding the June 1 incident, A.J. testified that Leach was still calling her from a number with no caller ID and communicating through the video streaming account. Some account names were "Ima Make Ur Death So Painful" and "I can see Everything U Do.. Udedsoon." She testified she found some of the names alarming or threatening. Taking the record in the light most favorable to the State, we find substantial evidence that the jury could conclude that a reasonable person "would feel terrorized, frightened, intimidated, or threatened."

We affirm, as substantial evidence supports all three stalking charges.

**B. Hearsay Claim.**

Leach challenges the admission of testimony claiming A.J.'s mother received a video of Leach and A.J. from him. Hearsay evidence is a statement, "[t]he declarant does not make while testifying at the current trial or hearing" that "[a] party offers into evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c). "The rule prohibiting hearsay evidence . . . forbids an out-of-court statement used 'to prove the truth of the matter asserted in the statement.'" *State v. Dessinger*, 958 N.W.2d 590, 603 (Iowa 2021) (citation omitted); *see also* Iowa R. Evid. 5.802. Evidence not offered for its truth but rather to explain the effect of the statements on the listener is not hearsay and is admissible. *State v. Doughty*, 359 N.W.2d 439, 442 (Iowa 1984). The State acknowledges that the challenged testimony is an out-of-court statement by A.J.'s parents. However, the State claims the statement is not being offered for the truth of the matter asserted but that it was offered to show "the effect of the statement on the victim and her subsequent conduct of contacting police."

The State points out that we are not prevented "from upholding the district court's admission of the [hearsay evidence] if it was properly admissible on any ground." *State v. Fontenot*, 958 N.W.2d 549, 555 (Iowa 2021). "When an out-of-court statement is offered, not to show the truth of the matter asserted but to explain responsive conduct, it is not regarded as hearsay." *State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990). "For a statement to be admissible as showing responsive conduct, however, it must not only tend to explain the responsive conduct but the conduct itself must be relevant to some aspect of the State's case."

*Id.* (affirming admittance of a non-party's out-of-court statement that was offered to explain the responsive conduct of the victim, not to prove the truth of non-party's statement). To determine admissibility, "we look 'at the *real* purpose for the offered testimony, not just the purposes urged by the prosecutor.'" *State v. Elliott*, 806 N.W.2d 660, 668 (Iowa 2011) (citation omitted).

At trial, the State asked A.J., "And what did you speak with your parents about?" Leach objected on hearsay grounds. The State argued "[A.J.] was a party to the conversation. She would have direct knowledge of what the conversation entailed." The trial court allowed A.J. to answer the question. In response, A.J. testified, "[Leach] had sent them a—or a picture and video to my mom of us having sex." The immediate conversation was about A.J. contacting the police and an officer arriving at her home:

> Q: After speaking with your parents, what did you do? A: I had called Sam, the officer . . ., to report the break of the no contact order. And [Leach] had followed through with one of his threats of sending that to my parents, and I knew that it was getting serious; so I knew that the cops should probably be involved at this point, so I called Sam.
> Q: And did Officer LaCoe report to your home? A: Uh-huh. Yes.

Here, the record is clear that the statement was not being admitted to prove the truth of the matter asserted, that Leach sent a video to A.J.'s mother, but how that statement impacted A.J.—it prompted her to contact the police. It did not matter whether Leach had *actually* sent the videos but A.J.'s assumption that he had was enough to call the police as she now feared he was acting on his threats. Because the statement was not admitted for the truth of the matter asserted it is not hearsay. *See* Iowa R. Evid. 5.801(c); *Doughty*, 359 N.W.2d at 442.

Even if this was considered hearsay, improperly admitted hearsay is not grounds for reversal unless it is prejudicial to the non-offering party. *State v. Thompson*, 982 N.W.2d 116, 121 (Iowa 2022). Given that a trial "court lacks 'discretion to admit hearsay in the absence of a provision providing for it' or deny the admission of hearsay if it falls within an exception," all improperly admitted hearsay is considered prejudicial unless the record affirmatively establishes otherwise. *Id.* (citation omitted); *see also State v. Huser*, No. 10-2067, 2011 WL 6079120, at *12 (Iowa Ct. App. Dec. 7, 2011) ("Erroneously admitted statements are not proper grounds for reversal if the State can prove the inadmissible evidence did not have an impact on the jury's guilty verdict."). Hearsay erroneously admitted "will not be considered prejudicial if substantially the same evidence is properly in the record." *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) (finding erroneously admitted hearsay not prejudicial when there was other unobjected to testimony of the evidence).

Here too, A.J.'s parent's statement that Leach sent the mother a video was admitted through other evidence properly in the record. The State brought this up in the record again when further questioning A.J., and Leach did not object:

> Q: You had stated that you had reported—or your testimony is that you had reported this after you had visited with your parents. A: Yes.
> Q: And I believe your testimony was that he had made good on one of his threats? A: Yes.
> Q: What threat was that? A: The one of threatening to send pictures and videos to my mom.

Another witness mentioned the video in passing when discussing the events that led to the harassment charge, claiming A.J. was with her parents because "[Leach]

had sent some stuff to her parents." Defense counsel also brought this up again when cross examining Chief Hegenbarth:

> Q: We've also had testimony that claims that [A,J.'s] mother was sent a video of [A.J.] and [Leach] having sex. You're familiar with that, right? A: No, I'm not.
> Q: Okay. You'd expect one of your officers to do some follow-up to track down that video and get information about it as part of an investigation if that's been reported? A: If that's been reported to them, I would expect it, but I have not seen it.
> Q: It would be really important to do, right?

The additional testimony about the videos being sent was cumulative and admission of the statement harmless error.

Moreover, "no prejudice will be found where the evidence in support of the defendant's guilt is overwhelming." *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006). Here, A.J.'s testimony about the video related to why she called the police for the incidents which led to the harassment charge from February 21 and eventual conviction under Iowa Code section 708.7(1), (2).[4] The record shows overwhelming evidence of harassment. Leach's telephone communications with A.J. included, "I can kill you whenever & however I want fyi," "I can't wait to watch your soul leave your body hehe," "We're both gonna be dead by the end of the day anyways hehe," "I will find you by the end of the day if you don't come over," "Help won't help us when a bullet goes thru our heads ;)," "I will tie you all up & make you watch your parents bleed out slowly.. you have no idea of what I'm capable of but you will find out soon," "Enjoy your last day on earth." Because there is

---

[4] The State had to prove Leach (1) communicated with A.J. by telephone without legitimate purpose, (2) communicated a threat to commit murder, and (3) did so "with the specific intent to intimidate, annoy or alarm [A.J.]." *See* Iowa Code § 708.7(1), (2).

overwhelming evidence of the harassment charge, admission of the statement is harmless.  We affirm because Leach cannot show prejudice and that the statement did not constitute hearsay under these facts.

## IV.    Conclusion.

Because we find that substantial evidence supports proof of Leach's identification, as well as the stalking verdicts, and because the challenged statement was not hearsay nor prejudicial, we affirm Leach's convictions.

**AFFIRMED.**