GEORGE F. RICHARDSON et al., appellants, v. GERTRUDE RICHARDSON, individually and as administratrix of estate of Arthur V. Richardson, et al., and FRANK BOROUGH, administrator of estate of Louisa C. Richardson, appellees.

No. 48991.

(Reported in 79 N.W.2d 769)

478

December 11, 1956.

Modified and Rehearing Denied February 8, 1957.

Updegraff & Updegraff, of Sigourney, and Jones, White, Starr & Johnson, of Ottumwa, for appellants.

Frank M. Beatty, of Sigourney, and Life & Davis, of Oskaloosa, for appellee Gertrude Richardson, individually and as administratrix.

SMITH, J.—On July 23, 1905, Francis P. Richardson died intestate owning 180 acres of land in the West Half of Section 13, Township 74 North, Range 12 ·West of the Fifth P.M., in Keokuk County, Iowa. That ownership dated back to various deeds to him executed in 1878, 1879, 1886 and 1898, conveying various tracts making up the portion known in the record ("for brevity") as group A. It may be considered the original Richardson home.

He left surviving him his widow, Louisa C. Richardson (who never remarried and who died intestate January 17, 1939), and their four children: Nora Belle (Martin), Arthur V. Richardson and plaintiffs, George F. and Lee Forrest Richardson. The title to the group A land is not involved here, having been adjudicated by the trial court as alleged by plaintiffs and there being no appeal from that part of the decree.

Not long prior to his death Francis P. and his oldest son, Arthur V. Richardson, were named grantees in a deed from Andrew Puder and wife (in February 1904) conveying the 125 acres known here as group B, viz., the East Half of the Southeast Quarter of Section 14 and the west 45 acres of the Southwest Quarter of Section 13, immediately east of Section 14. (The group A land above referred to is 180 acres all in the West Half of Section 13, lying 120 acres north and sixty acres south of an east-and-west half-section line.)

Group C is the remaining 55 acres in the Southwest Quarter of Section 13, lying east of the south sixty acres of group A. Included in group C is also a five-acre timber lot in Section 12, up north of all the other Richardson land. The group C land was, on February 3, 1910, deeded by C. Myers to the three Richardson sons, A. V. (Arthur V.), George F. and L. F. (Lee Forrest). No part of group C is shown to have come into the family during the father's, Francis Richardson's, life. During the father's lifetime the family home was in the residence on the north side of the east-and-west road. The home on the group B land is farther west on the south side. There seems to be no residence on group C.

Arthur V. Richardson died November 23, 1953, intestate and without issue. His widow, Gertrude Richardson, is named

here as defendant, both individually and as administratrix of her husband's estate.

Other named defendants are the four Martin sons of Nora Belle Martin, daughter of Francis P. Richardson; and Frank Borough, administrator of the estate of Louisa C. Richardson. The Martin sons did not appear; the administrator of Louisa's estate filed an answer admitting the allegations of plaintiffs' petition but took no part in the trial or appeal.

The case is referred to as a partition suit and partition *is* sought. But it is not a technical partition suit. No abstract or evidence of title is shown except deeds by which the Richardson family claims. The title is not traced back to the Government. It is a strictly family fight. Plaintiffs pleaded Arthur V. Richardson owned at the time he died an undivided $22/72$ interest in the land referred to as group A, and that they owned a $25/72$ interest each. The trial court so held.

As to group B, plaintiffs pleaded they each owned an undivided $25/144$ each and that Arthur owned $47/72$ ($94/144$); and that as to group C the three owned each an undivided one-third share. The trial court held Arthur V. Richardson was the absolute owner of all the land in groups B and C when he died and that defendant Gertrude Richardson was entitled to her statutory share of all he died seized of, including the interest provided by both Code section 636.5 and section 636.32, Iowa Code, 1954.

Plaintiffs appeal.

The decision as to groups B and C seems to depend upon proof of an agreement entered into after the death of Francis P. Richardson, but possibly in ratification of a similar one between him and Arthur, whereby plaintiffs and their mother agreed to deed to Arthur groups B and C upon his payment of certain sums advanced or secured by them to aid him in the payment for those tracts.

Both plaintiffs were put on the witness stand as witnesses for defendant Gertrude Richardson (named individually and as administratrix of her husband's estate) and were cross-examined as to a unilateral written instrument, dated February 5, 1910, signed and acknowledged by plaintiffs and their mother, agreeing "to sell and convey" to Arthur "all our interest or

apparent interest" in groups B and C (describing all but the five-acre wood lot); "Said deed or deeds to be executed at the time said A. V. Richardson pays or causes to be paid to said Louisa C. Richardson, George F. Richardson and L. F. Richardson, any balance of the purchase price advanced by F. P. Richardson, for the purchase of" the land comprising group B.

Plaintiffs were the only direct witnesses of such a contract. Of course Arthur and the parents were all dead and there were no others. Numerous checks and notes were identified, calculated to prove Arthur's payment of the amount upon payment of which execution of the deed to him was conditioned. These notes and checks were numbered as Exhibits L to S inclusive and A-5 to A-10 inclusive, and though not regularly offered in evidence were made a part of the record by subsequent judicial order, naming them by the exhibit numbers, complained of by plaintiffs-appellants as erroneous.

But for some undisclosed reason the unilateral written agreement by which plaintiffs and their mother agreed, upon condition, to convey their "interest or apparent interest" to Arthur was not included. We are required, as was the trial court, to consider only evidence legally made a part of the record.

I. Plaintiffs-appellants first argue that the trial court erred in ordering the fourteen exhibits, not regularly or timely offered, made a part of the record upon defendants' motion to amend the typewritten abstract after appeal was taken. Specific identical objection was made to each exhibit:

"Object to inclusion of Exhibit .... as a part of the record on the appeal in this cause for the reason that the same was never offered in evidence as an exhibit therein."

We have no doubt of the trial court's right and power—and *duty*—to require the record to reflect truthfully the admissible evidence used on the trial. Neither party has a right to conceal from court or opposing counsel material so used in examination of a witness. Certainly the attorney examining a witness has "a record to make." And within reasonable limits he should be allowed to go about it in his own way. But opposing counsel has a right to know what is going on.

The formal method of the making of record exhibits used in examination of witnesses is too well understood to require explanation here. The numbered exhibits not offered during the trial were identified and doubtless available to opposing counsel had they wished to use them. We are convinced by the record presented that had counsel desired them for examination or cross-examination purposes they were available. And when defendants belatedly sought to make them of record, plaintiffs could and would have been permitted to protect their interests. We are speaking of the canceled checks and notes that were identified. We understand they were the ones covered by the trial court's order in settling the record.

But we do not understand the unilateral written contract purportedly signed by plaintiffs and their mother, Louisa C. Richardson, was included in that order. Doubtless even at that late date it might have been included by reopening the case if deemed by the trial court, or perhaps this court, necessary in the proper administration of justice.

But we are not confronted by that problem here since no effort has been made in the court below to make that written agreement a part of the record on appeal. The proposed addition included only "Defendants' Exhibits" L to S inclusive and A-5 to A-10 inclusive, "all of which have heretofore been set out in this record." The trial court did not err. The ruling was within the bounds of judicial discretion.

II. We have now the more difficult task of determining as to the sufficiency of the evidence without benefit of the unilateral instrument which might have been helpful to such determination. Plaintiffs plead the record title to groups B and C. Defendant widow and administratrix relies upon other evidence to show her husband's full equitable ownership of the land comprised in groups B and C. This evidence is largely circumstantial, but also largely uncontradicted.

Francis P. Richardson, while named as one grantee in the Puder deed which conveyed group B, lived in the home on the north side of the road which divided group A. It remained his home till he died and remained his widow's home nearly thirty-four years thereafter, until her death.

The Richardson history is nebulous in the record during the time immediately following the purchase of group B in 1904. The boys, at least Arthur, the oldest, were unmarried. All apparently lived on the home place north of the road on group A. The Puder deed to group B names Arthur first, suggesting he and not the father was the real purchaser.

Plaintiff Lee Forrest Richardson (then about 19 years old) as a witness here called by the defense says it was paid for "mostly by my father." The deed recited a consideration of $9450. Lee says his father "made a payment of $3750" and that his mother made "three other payments on it" in 1906 and 1907: "Fourteen hundred and four hundred and there was—I think there is thirteen hundred paid, maybe another fourteen hundred. I am not sure about that."

But when group C was bought for $5580 (Myers deed, February 3, 1910) a mortgage of $5600 to the bank was executed by A. V. Richardson, his mother and two brothers covering the "East Half of the Southeast Quarter of Section 14; and the West 45 acres of Southwest Quarter of Section 13; and the East $^{11}\!\!/_{16}$ of the East Half of the Southwest Quarter of Section 13; * * *.

"Said Louisa C. Richardson has or claims no interest in or to the tract of land last above described."

This mortgage covered the land in group B and all of group C except the five-acre timber lot. The Myers deed of the same date conveyed group C to the three brothers only. And the $5600 note secured by the mortgage was signed *only* by A. V. Richardson.

It seems clear thus far that Louisa C. Richardson signed the mortgage solely to permit the group B land to be included in the security for the purchase price of group C. Her careful disclaimer of interest in the group C fifty-five acres must mean that and only that.

The failure of both plaintiffs and their mother to sign the $5600 note secured by the mortgage has similar significance as to the mother's disinterest in the current transaction and would also have the same as to plaintiffs', except for the fact they are both included with Arthur V. as grantees in the Myers deed. Both plaintiffs had an apparent interest (through Francis

P., their father, being named a grantee in the Puder deed) in group B which was being mortgaged and needed to be pledged.

But why were they included as grantees in the Myers deed? And what evidence is there to show they do not retain that interest?

III. The $5600 note secured by the mortgage already referred to was due March 1, 1915, payable to Union Savings Bank of Sigourney, Iowa, at the First National Bank, of Sigourney. It represents the entire purchase price of group C. Canceled checks and notations on the note show the entire amount including interest was paid by Arthur in amounts as follows: March 1, 1911, $1436; March 1, 1912, $270; April 12, 1912, $1610.90; and September 14, 1912, $2993.25.

These exhibits quite clearly show that Arthur paid the entire purchase price of the land identified as group C—the Myers land. They were identified and regularly offered and received in evidence. Plaintiffs were given every opportunity to give them some other explanation but none was offered and we conclude that though they are named with Arthur as grantees in the Myers deed plaintiffs have no real beneficial interest in the sixty acres of group C.

IV. The status of the group B land is less clear. True, the record quite clearly shows groups B and C constituted a separate and distinct farm from group A, with separate buildings and under separate management. And it is also true Arthur took control of group B from the first and during his father's life. When he and defendant Gertrude married in 1924 it became their home and she still remains in possession of groups B and C.

But the situation as to the two groups (B and C) was not the same. It quite clearly appears Arthur paid for group C and his brothers contributed nothing. But there is no showing his father and Arthur had not each paid his share of the purchase price of group B. And Arthur's subsequent exercise of complete management was not inconsistent with the father's part ownership, nor with plaintiffs' claim through their father.

The controversial exhibits (L to S inclusive and A-5 to A-10 inclusive) show some substantial payments by Arthur to some members of the family over the years and some substantial

bank loans to him for some purpose. But is there evidence to identify those payments and loans with a plan to purchase the father's interest in group B?

The entire purchase price of that land from the Puders in 1904 is shown by the deed to have been $9450, presumably paid in equal shares by the two grantees. There was no mortgage back. Among these exhibits we find no pattern of payment linking any of them with the group B transaction—at least in absence of evidence of a contract between father and son, or of some indebtedness of one to the other growing out of the purchase. The father's part ownership of tract B was not merely nominal or necessarily temporary. Certainly there is nothing from which a contract by Arthur to purchase or by his father's widow and heirs to sell could be inferred.

V. The importance of the unilateral agreement (referred to in Division I hereof) to defendant widow's case as concerns the group B land is apparent. She had the burden of proving her husband's ownership of the half interest in group B standing in his father's name. It required proof of payment of an amount based on a contract express or implied. That proof was vital.

She attempted to mend her hold by a belated (April 16, 1956) "Motion to Correct Printed Record" embodying some evidence from a case, subsequently tried, in which the administrator, Borough (defendant here), unsuccessfully sought to recover alleged indebtedness due Louisa Richardson's estate from Arthur's.

We cannot sustain it. It would require a reopening of the case. There is no allegation or suggestion that the new matter was unknown to defendant and her attorneys when the instant case was tried. Certainly they knew of the unilateral written agreement they used in cross-examining plaintiffs.

Every opportunity was given them to have it identified with an exhibit mark for future reference. The objection was repeatedly urged and at one aggravating moment the presiding Judge commented: "Yes, it has been referred to here quite frequently. Seems to be made of gold or something. Life carries it around in his inside pocket."

486

But the instrument was not marked and we are now shown it and asked to infer its identity. This we cannot do.

■ VI. We have not cited authorities as to the rules involved here. We concede the general rules cited by plaintiffs from 88 C. J. S., Trial, pages 166 to 169. "Where documentary evidence is offered, each piece should be * * * exhibited, if desired, to the opposing counsel, identified * * * with suitable marks * * * and * * * offered at the trial." 88 C. J. S., Trial, section 62a. See also section 61c.

But we also concede there is no absolutely necessary method to be invariably followed; and whether a document is in evidence must be determined from the facts of each case. Ibid., section 62a, citing Lowe v. Talbert, 93 Ind. App. 384, 176 N.E. 36. Various cases cited by defendants sustain the contention there is no hard and fast rule, e.g., Jones v. Driver, 282 Ky. 82, 137 S.W.2d 729.

We think the authorities fully sustain the ruling of the trial court admitting in evidence exhibits which had been properly identified and were available for examination and cross-examination, though not formally offered in evidence. But we cannot, in this situation, permit the case to be further reopened.

. ■ VII. Some time is spent in brief and argument on an assignment of error based on the trial court's finding that defendant Gertrude Richardson "is entitled to her dower or distributive share as provided by section 636.5 of the Code of Iowa * * * and to have the same set apart as her property in fee simple, free and clear of all (decedent's) debts * * * and of costs and expenses of administration" of the estate and of the costs of this action, and is entitled to such additional amount as provided by Code section 636.32 in addition thereto.

We are not disposed to treat this as a proceeding to admeasure dower. The expense of such a proceeding in the administration proceeding will follow the usual course. The costs here pertain to the determination of the respective ownerships, including determination of the extent of Arthur's interest.

Defendant Gertrude Richardson will be entitled to have dower admeasured under Code sections 636.5 and 636.32, Iowa Code 1954, in her husband's interests as follows, to wit: In

$^{22}\!/_{72}$ of group A; $^{47}\!/_{72}$ of group B; and all of group C. Costs on appeal to be taxed two thirds to appellants, one third to appellee Gertrude Richardson, administratrix.—Modified and affirmed.

THOMPSON, C. J., and GARFIELD, OLIVER, WENNERSTRUM, LARSON, HAYS, and PETERSON, JJ., concur.