# IN THE COURT OF APPEALS OF IOWA

No. 14-1579
Filed December 23, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ROGER BERNELL ENNENGA,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano (mistrial) and Richard G. Blane II (trial), Judge.

Roger Ennenga appeals his convictions, following a jury trial, to three counts of unauthorized use of a credit card and one count of theft in the third degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

Roger Ennenga appeals his convictions, following a jury trial, to three counts of unauthorized use of a credit card and one count of theft in the third degree. He asserts trial counsel was ineffective for failing to argue that the jury should determine if the thefts were attributable to a single scheme, plan, or conspiracy, and thus able to be considered a single act within the meaning of Iowa Code section 714.3 (2013). Because the State charged Ennenga with three separate counts, no instruction was necessary and counsel was not ineffective. Ennenga further argues he should be granted a new sentencing hearing, as the district court considered improper factors when imposing the maximum sentence; the record, though, demonstrates the court only considered proper factors when imposing its sentence. Additionally, Ennenga asserts the court should have given a spoliation instruction to the jury, as he claims a *Brady* violation occurred when the State did not secure all of the surveillance video. However, we conclude no *Brady* violation occurred where Ennenga failed to establish the State intentionally or in bad faith destroyed exculpatory material. Ennenga also contends the court erred when admitting various testimony over his hearsay objections, as well as when it considered evidence outside the record when denying his pro se motions for new trial. With regard to this latter argument, Ennenga failed to preserve error; furthermore, the district court properly admitted the statements that Ennenga complains are hearsay because they were entered to show the responsive conduct of the witnesses, in addition to being cumulative. For these reasons, we affirm Ennenga's convictions and sentence.

**I. Factual and Procedural Background**

Evidence at trial established the following facts. On March 5, 2014, Norma Van Houten was bowling with her senior league at Plaza Lanes, a bowling alley in Des Moines. A friend noticed an unfamiliar man standing behind Norma while they were bowling. After the game ended, Norma went to the restroom, leaving her purse outside the door, unattended. When she returned, her wallet containing approximately $700 in cash was missing, along with her identification and a credit card. She and her husband, Charles Van Houten, contacted the police.

Plaza Lanes employee Lindsay McMillen looked through surveillance videos, which depicted a man in a blue and red jacket enter the bowling alley and remain for ten minutes, without bowling or speaking to anyone. While there he went to the restroom and the locker bays before getting into a car and driving away. The place where the wallet was stolen was not on camera. Portions of the video showing Ennenga's face and vehicle were offered into evidence. However, the authorities did not request all of the day's video footage, and it was automatically erased from the surveillance equipment approximately two months later, as programmed.

When the Van Houtens and their daughter, Valerie Mason, called to cancel the credit card, the company informed them where the card had been used. Video surveillance showed a man, later identified as Ennenga, using the credit card to purchase various items at a Walgreens, a microwave at Habitat for Humanity Restore, and a carwash, for a total of three separate transactions,

made within seventy-five minutes of each other.  Credit card receipts confirmed it was Norma's credit card.  The credit card, cash, and wallet were never located.

The State charged Ennenga on April 9, 2014, with three counts of unauthorized use of a credit card, each an aggravated misdemeanor, in violation of Iowa Code section 715A.6(2), and one count of theft in the third degree, also an aggravated misdemeanor, in violation of Iowa Code section 714.1(1).[1]  Trial commenced on July 7, 2014, but a mistrial was declared the next day.[2]  It began again on August 4, 2014, and the jury found Ennenga guilty on all four counts on August 7.

Ennenga filed pro se motions for new trial on August 26, 2014, as later amended.  Following a hearing, the district court denied both motions.  The sentencing hearing was held on September 18, 2014, and the court imposed a sentence not to exceed two years on each conviction, with the sentences to run consecutively.  Ennenga appeals.

**II. Standard of Review**

We review constitutional issues, including ineffective-assistance claims, de novo.  *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).  Our review of evidentiary claims is for an abuse of discretion, though hearsay issues are reviewed for correction of errors at law.  *State v. Richmond*, 590 N.W.2d 33, 34

---

[1] While Ennenga was charged under section 714.2(3), the jury instructions were more specific, and the verdict form asked the jury to decide what amount—over $500 or under $1000—had been stolen.
[2] The basis of the mistrial was a *Brady* violation in which a witness gave a nonresponsive answer to a direct question by the prosecution.  The district court, in its order, found the State was not at fault, and trial began anew.

(Iowa 1999). With regard to sentencing decisions, our review is for an abuse of discretion. *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003).

**III. Ineffective Assistance of Counsel**

Ennenga first asserts trial counsel was ineffective for failing to request that the jury make a finding as to whether the three credit card offenses were part of a "single scheme, plan, or conspiracy," and thus a single act. He argues the value of the items obtained with the credit cards could be aggregated, as set forth in Iowa Code section 714.3, and therefore, there should have been an interrogatory asking the jury whether the credit card offenses should be aggregated.[3]

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *Straw*, 709 N.W.2d at 133. We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure. *Id.*

Iowa Code section 714.3 states:

If money or property is stolen from the same person or location by two or more acts, or from different persons by two or more acts

---

[3] In his pro se brief, Ennenga contends counsel was also ineffective for failing to object to the prosecutor's closing argument, in which the State, according to Ennenga, "introduced perjured testimony." The statement to which Ennenga objects is as follows:

> [W]as it the defendant who did it? You heard the evidence that people who saw the video everything the defendant did in the bowling alley that day that was captured on the Plaza Lanes video, they saw him enter the bowling alley, walk past the restroom and then stand there watching the senior bowling league for an extended period.

Ennenga's brief does not elucidate why or how these statements constitute perjury, other than a vague assertion it contradicts the testimony of two witnesses. We conclude no essential duty was breached when counsel did not object, and Ennenga's claim is without merit. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999) (holding if counsel does not breach an essential duty he cannot be considered ineffective).

which occur in approximately the same location or time period, or from different locations by two or more acts within a thirty-day period, so that the thefts are attributable to a single scheme, plan, or conspiracy, these acts *may be* considered a single theft and the value *may be* the total value of all the property stolen.

(Emphasis added.)

The language of this statute is explicitly permissive and governs the manner in which the State may charge a defendant if the series of thefts is attributable to the same scheme or plan. *See State v. Jacobs*, 607 N.W.2d 679, 689 (Iowa 2000) (noting the State is not required to aggregate several counts of thefts into one charge). This section does not, however, require a finding from the jury regarding whether multiple thefts are part of a common scheme, as long as the State declines to aggregate the thefts when charged into a single count. *See* Iowa Code § 714.3; *see also State v. Chrisman*, 514 N.W.2d 57, 58–59 (Iowa 1994) (stating the State is not required to charge different acts of theft as a single count, "no matter how closely they may be connected"; furthermore, because the thefts were not aggregated, there was no jury instruction regarding whether the thefts were attributable to the same scheme).

To dispute the wording and judicial interpretation of section 714.3, Ennenga relies on *State v. Amsden*, 300 N.W.2d 882, 886 (Iowa 1981), which held the district court erred when it failed to instruct the jury to make a finding as to whether or not the crimes were attributable to the same scheme. However, the defendant in *Amsden* was charged with one count of theft, that is, his separate crimes were aggregated in the charging instrument; therefore, in making the finding there should have been instructions based on Iowa Code section 714.3, the *Amsden* court was relying on the fact the defendant's separate

thefts were charged as one crime.  300 N.W.2d at 883, 885–86.  Consequently, *Amsden* is factually distinguishable from the case here, as Ennenga was charged with three separate credit card offenses and the jury made a separate finding as to each offense.

Given the foregoing conclusions, Ennenga's claim would not have been successful at trial.  Because counsel is not ineffective for failing to pursue a meritless issue, Ennenga's ineffective-assistance claim fails.  *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999).

## IV. *Brady* Violation

Ennenga also argues that his due process rights were violated when some of the video from the bowling alley was later automatically erased.  He contends the State's failure to obtain all of the video footage from the bowling alley—some of which may have been favorable to his defense—resulted in a *Brady* violation.

To establish a due process violation based upon destruction of evidence, the defendant must show: (1) a proper defense request for the evidence; (2) that the evidence was material; and (3) that the evidence would have been significantly favorable to the defendant.  *State v. Hulbert*, 481 N.W.2d 329, 334 (Iowa 1992).  This test—known at the *Brady* test—may be applied when there has either been an intentional destruction of exculpatory evidence or a bad faith destruction of potentially exculpatory evidence.  *Id.*  If there has been a *Brady* violation, the remedy is a spoliation jury instruction.  *Id.*

Here, Ennenga cannot establish the State intentionally or in bad faith destroyed the video surveillance.[4] Plaza Lanes employee McMillen testified she gave the authorities the portion of the day's video that would help identify a yet-unknown, unfamiliar man in the bowling alley the night Van Houten's wallet was stolen. Ennenga does not dispute that he received the same evidence that was in the State's possession. The portion not turned over to the State, and hence Ennenga, was destroyed automatically by the recording system at Plaza Lanes. Moreover, there was no evidence that any portion of the video would have assisted in Ennenga's defense. Consequently, Ennenga has failed to establish a *Brady* violation. *See State v. Hartsfield*, 681 N.W.2d 626, 632 (Iowa 2004) ("Ordinarily evidence destroyed under a neutral record destruction policy is not considered intentionally destroyed.").

## V. Spoliation Instruction

In connection with the alleged *Brady* violation, Ennenga contends the district court erred when it declined to give the jury a spoliation instruction. He asserts that, because the State failed to secure all of the Plaza Lanes video, the

---

[4] McMillen testified the video cameras mainly focused on areas such as the front desk where the two cash registers were, the bathrooms, the service bar, and the entrances. As to Ennenga appearing on the video, McMillen testified:

> We were able to trace back and find the vehicle that pulls into—it wasn't a parking spot—just up next to the building. And you see the individual get out of there and enter in the south entrance and walk down that south hallway. And then he proceeds to walk down the bowling concourse, pass one bathroom, and go into the bathroom at the north end of the bowling concourse. And then there's no cameras in the bathroom. You see him then a short time later on his way back out towards the south entrance. And then you can see him in the hallway where he passes one of our employees that said hello or—I'm not sure what's said, but hi. And then you see the individual duck into the locker bays—they've got all the lockers there for all the bowlers—and then he exits the building.

She also noted the man was in the building for ten minutes.

court should have given a spoliation instruction, that is, a jury instruction that this missing evidence would have been adverse to the State.

The remedy for a *Brady* violation when the evidence at issue has been destroyed is to submit a spoliation instruction. *Hulbert*, 481 N.W.2d at 334. The *Brady* spoliation rule does not apply, however, when the destruction of evidence was merely negligent or unintentional. *Id.*

As established in the above analysis, Ennenga has failed to show that the State possessed the video, let alone intentionally destroyed it. His only argument rests on the State's failure to secure all of the video from the bowling alley. However, Ennenga can point to nothing that would have been exculpatory, nor any intentional destruction of evidence by the State. Therefore, no *Brady* violation occurred, and the district court did not err when it declined to give a spoliation instruction to the jury. *See Hartsfield*, 681 N.W.2d at 632 (holding no spoliation instruction needed to be given, as the defendant failed to establish the State intentionally destroyed video surveillance).

**VI. Admission of Evidence**

Ennenga also argues the district court erred when overruling his hearsay objections. Specifically, he takes issue with portions of the testimony of Mason, Norma Van Houten, and Charles Van Houten. He asserts the court improperly concluded the testimony was offered to show responsive conduct, as the witnesses testified to the content of their conversations, which amounted to hearsay. Additionally, in his pro se brief, Ennenga argues the court should not have admitted Exhibit 9—the video from the Habitat for Humanity surveillance,

due to the lack of foundation; furthermore, he claims his due process rights were violated when the court allowed into evidence a tainted identification.

## A. Hearsay

A statement is not hearsay when it is admitted to show its effect on the hearer and to explain that person's conduct; thus, it does not constitute hearsay because it is not admitted for the truth of the matter asserted. *State v. Mann*, 512 N.W.2d 528, 535 (Iowa 1994). Apart from the nature of the statement, the responsive conduct must be relevant to some aspect of the case. *State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990).

With regard to the testimony of Charles Van Houten, he stated he called the credit card company, which informed him the card had been used to purchase items at various establishments. Charles then went to the stores and inquired as to whether they had information regarding the stolen credit card. This testimony established responsive conduct on the part of Charles—the credit card company informed him of where the card had been used, prompting him to gather information as to who may have used the credit card. These statements were entered to show responsive conduct, and therefore, they are not hearsay. *See id.*

As to Mason's testimony that her mother had informed her that the wallet had been stolen, this statement was entered to show why Mason went to the bowling alley to be with her mother. This is also responsive conduct on the part of Mason—based on Norma's statement—and is relevant to show how Mason then watched the video footage from the evening. Furthermore, it is cumulative of other evidence, as the record demonstrates numerous instances in which

witnesses testified that the credit card from the stolen wallet had been used. *See State v. Elliot*, 806 N.W.2d 660, 669 (Iowa 2011) (noting that, even if a hearsay statement is improperly admitted, if it is cumulative of other evidence it is not prejudicial). Consequently, no prejudicial error was committed when the district court allowed Mason's statement. *See Mitchell*, 450 N.W.2d at 832.

The testimony of Norma—in which she stated her friend called attention to a man standing behind her, wondering if it was her husband—was also admitted to show responsive conduct. The friend's question established why Norma turned around, as well as explains Norma's observation that the man standing behind them was not in fact her husband; consequently, this testimony does not constitute hearsay. *See id.* Moreover, Ennenga failed to establish any prejudice with regard to this testimony. Consequently, the court properly admitted these statements, and Ennenga's evidentiary claims are without merit.

**B. Exhibit 9**

With regard to Ennenga's Exhibit 9 (a video) foundation argument, the State responds that, because Ennenga failed to object at trial, error was not preserved. We agree. For error to be preserved, the party must assert his objection in a timely manner, and the court must then rule on the issue. *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). "If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Id.* (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002)). No such objection to Exhibit 9 appears in the record, nor is this framed as an ineffective-

assistance argument. Consequently, error was not preserved, and we decline to address the merits of this claim. *See id.*

### C. Identification

The State asserts that, because Ennenga's pro se brief lacks argument supporting his claim of error, this claim is waived. The section of Ennenga's brief dealing with the identification argument consists of a quotation of testimony from the first trial held on July 7, 2014. There is no supporting argument, citation to authority, or explanation regarding the basis of Ennenga's due process claim. Consequently, we agree with the State that the claim is waived, and we decline to address the merits. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) ("In the absence of an argument on these allegations [on appeal], we deem them waived.").

## VII. Motions for New Trial

Ennenga further asserts the district court improperly considered evidence outside the record when ruling on his two pro se motions for new trial. The State again responds error was not preserved, as Ennenga made no specific objection to the facts the district court cited; additionally, in his brief, he does not refer to what precise factual errors to which the order referred.

The State is correct in its assertion that error was not preserved. The pro se motions for new trial were filed on August 26, 2014, as later amended, and the district court issued a ruling denying the motions on September 5, 2014. At the sentencing hearing, Ennenga—arguing these motions pro se—stated on the record that the court erred in several respects. Ennenga asserted the evidence

failed to establish he had committed any of the offenses; that Lindsey McMillen, a witness, no longer worked at Plaza Lanes; and that he was not notified of one of the witnesses. However, at no point did he assert the district court, in its ruling, considered facts outside the record. Rather, this is an argument asserted solely on appeal. Consequently, error was not preserved, and we decline to address the merits of this claim.[5] *See Lamasters*, 821 N.W.2d at 864.

## VIII. Sentencing

Ennenga's final claim argues the district court relied on improper factors when imposing the maximum sentence of four consecutive, two year sentences. He contends the court's statements regarding Ennenga's conduct during trial, the amount of time Ennenga would serve before he could be paroled, as well as alleged unprosecuted offenses, amounted to a defect in the sentencing procedure such that a new sentencing hearing is required.

With regard to the criteria for sentencing, our court has noted:

> The trial court and we on review should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of his reform. The courts owe a duty to the public as much as to the defendant in determining a proper sentence. The punishment should fit both the crime and the individual.

*State v. Bragg*, 388 N.W.2d 187, 191 (Iowa Ct. App. 1986). In order to assess whether the trial court properly exercised its discretion in light of the relevant

---

[5] Were we to address the merits, however, we note that any reference to facts not contained in the record before the district court is improper. *See Richardson v. Richardson*, 79 N.W.2d 769, 771 (Iowa 1956) ("We are required, as was the trial court, to consider only evidence legally made part of the Record."). Thus, a statement referring to the court's personal knowledge of a fact, which is not otherwise contained in the record, is improper. In this particular instance, though, we find no indication the lower court committed an error that would in any way prejudice the defendant.

factors delineated above, the court must state its reasons for the sentence on the record. *Id.*

During the sentencing hearing, the district court engaged in the following colloquy when explaining why it imposed the maximum sentence:

> As far as seeing whether or not this is the bad Roger or the good Roger, first of all, the county attorney has recited a number of convictions. They go back to the 1980s.
>
> I also heard evidence concerning the tape-recorded conversations between him and Ms. Thompson. There were a number of those played for the jury at the time. It has to be assumed by the Court that Mr. Ennenga was not under the influence of K2 while he's in jail. And his comments and some of the statements he made in there still show his criminal mind.
>
> The argument that he is rehabilitatable is rebutted by the recitation by the county attorney of the criminal convictions and the imprisonments that Mr. Ennenga has had since the 1980s.
>
> The Court finds that the nature of the crimes committed by you, Mr. Ennenga, are despicable. You select your victims, and you prey on the elderly in our community. You show no remorse. You treat this as a game as well as you treat this court process as a game. You are a leech on our community.
>
> Based upon your past criminal record, you show no attributes for rehabilitation. You are simply a person that should be warehoused in our Department of Corrections to keep you away from society and out of our community for as long as possible so that you cannot perpetrate your crimes in the future. I will state for the record I am not considering the 2003 forgery conviction which was reversed on appeal.
>
> The Court, as indicated, finds that the sentences should run consecutively based upon the defendant's criminal history, the nature of the offenses committed here, and the defendant's propensity for further criminal acts based upon his prior criminal record.

"Sentencing decisions are cloaked with a strong presumption in their favor. A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure, such as trial court consideration of impermissible factors." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000). Proper considerations include

what sentence "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5. The court is not permitted to consider unproven offenses as a sentencing factor. *State v. Sailer*, 587 N.W.2d 756, 762 (Iowa 1998).

Here, the court considered the following factors: (1) Ennenga's chances for rehabilitation, at which time the court remarked upon his criminal history, as well as the possibility of substance abuse; (2) the nature and severity of the offenses; (3) the safety and protection of the community; and (4) Ennenga's lack of remorse, demonstrated in part, by his behavior at trial. These considerations are proper and do not amount to a defect in the sentencing procedure. *See* Iowa Code § 901.5; *Sailer*, 587 N.W.2d at 762 (reviewing the proper sentencing factors). As the State noted, the district court "perceived a manipulative streak in the defendant that mocked the process and . . . called attention to it at sentencing." However, the court is permitted to engage in "unfortunate phraseology" without imposing an illegal sentence. *See State v. Nichols*, 247 N.W.2d 249, 254–55 (Iowa 1976). The record does not reflect the court's consideration of improper factors.

Furthermore, we do not agree with Ennenga's contention the court considered when he would be paroled as a factor in its sentencing decision. After the sentence had already been imposed, the court remarked: "I'm somewhat familiar with the fact that I receive notices whenever inmates are released, and I compare the date of the release to the sentencing. It always

amazes me how soon defendants get out compared to when they are supposed to, by my calculations, to be released."

At that point in the proceedings, the parties were discussing the no-contact order. Thus, the court did not consider as a factor when Ennenga might be granted parole when determining his sentence. *See generally State v. Remmers*, 259 N.W.2d 779, 785 (Iowa 1977) (holding that the contemplation of the actual length of time the defendant might serve is an impermissible consideration). The unproven-offenses argument is also without merit— Ennenga's conduct during trial did not amount to unproven criminal conduct but, rather, was evidence of an uncooperative character trait, which spoke to Ennenga's ability to be rehabilitated. Consequently, the record establishes the court did not consider impermissible factors, and no defect in the sentencing procedure occurred such that a new sentencing hearing is required. *See Sailer*, 587 N.W.2d at 762.

For these reasons, we affirm Ennenga's convictions and sentence.

**AFFIRMED.**