# IN THE COURT OF APPEALS OF IOWA

No. 15-0117
Filed November 9, 2016

IN RE THE MARRIAGE OF KATHRYN R. NIELSEN
AND ERIK J. NIELSEN

Upon the Petition of
**KATHRYN R. NIELSEN,**
Petitioner-Appellant,

And Concerning
**ERIK J. NIELSEN,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Montgomery County, Mark J.

Eveloff, Judge.


Kathryn Nielsen appeals from the economic and parenting provisions of

the district court's dissolution decree. **AFFIRMED.**


Kathryn R. Nielsen, Red Oak, appellant pro se.

Matthew J. Hudson of Hall Hudson, P.C., Harlan, for appellee.


Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

**I. Background Facts and Proceedings**

Kathryn and Erik Nielsen married in July 1999. During the marriage, the couple moved to Red Oak and had four children. Kathryn and the children reside in Red Oak in the marital home where Kathryn homeschools the children; Erik now lives in Harlan.

The marital home was purchased in 2007 and placed solely in Erik's name, apparently due to Kathryn's large student-loan debt. At some previous time, the family suffered mold exposure at some location and have now outfitted the marital home to be mold-free to meet the family's health needs.

Erik has an associate degree and currently works for a technical company in Harlan. According to his testimony and evidence he presented at trial, he earns approximately $35,000 per year. Kathryn has a bachelor's and master's degree. She had begun work on a second master's degree but was unable to complete the program due to pregnancy-related conditions. During the entirety of the marriage, Kathryn has been a stay-at-home mother.

Kathryn filed the petition for dissolution of marriage on July 26, 2013, and the hearing on temporary orders occurred on September 9, 2013. At the hearing, the court awarded Kathryn and Erik joint legal custody with Kathryn having physical care of all four children and regular and liberal parenting time for Erik. Erik was also ordered to pay $878 a month in child support. Kathryn was awarded possession of the marital home, and the court later ordered Erik to continue to make the mortgage payments on the home.

Following the November 6, 2014 trial, the court entered the decree of dissolution of the marriage. The decree awarded Kathryn physical care of the children with Erik maintaining a specified parenting-time schedule. The court also ordered Erik to continue to make child support payments; however, that amount was reduced to $791 per month with the court basing that figure on Erik's $35,000-a-year salary and the $15,080-a-year salary the court imputed to Kathryn. Erik was also ordered to maintain health insurance for the children; uncovered medical expenses were to be split with Kathryn being responsible for thirty-one percent and Erik being responsible for sixty-nine percent. The decree also authorized Erik to claim the minor children as dependents on his income tax returns until Kathryn obtained employment earning at least $15,080 annually, at which time Kathryn and Erik would then split the dependency exemptions on their respective tax returns. As to the marital home, the court ordered Erik to continue making the mortgage payments until May 31, 2015, by which time it was to be sold; and if the house had not sold by then, Kathryn and Erik were to split the monthly mortgage payments. The decree did not require the payment of alimony for either spouse.

Kathryn appeals.

**II. Standard of Review**

We review cases tried in equity, such as dissolution cases, de novo. *See In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. *See* Iowa R. App. P. 6.904(3)(g). Although helpful, prior cases have little precedential value because we must

base our decision primarily on the particular circumstances of the parties presently before us. *See In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We afford the trial court considerable latitude in making factual determinations and will disturb the ruling only when there has been a failure to do equity. *See Gust*, 858 N.W.2d at 406.

## III. Discussion

### A. Calculation of Parties' Incomes for Child Support

Kathryn argues the district court incorrectly determined Erik's income for use in calculating child support. Specifically, she argues the trial court did not factor in Erik's bonuses, perks, and overtime pay as supported by the figures submitted into evidence on his paycheck stubs. Additionally, she contends Erik's father has been paying Erik's attorney fees and, in exchange, Erik has been working for his father. She contends this is a form of bartering under the Internal Revenue Code and is therefore considered to be income. She also argues the court incorrectly imputed income to her.

In Iowa, "[b]efore applying the guidelines there needs to be a determination of the net income of the custodial and noncustodial parent." *In re Marriage of Hagerla*, 698 N.W.2d 329, 331 (Iowa Ct. App. 2005) (citing *In re Marriage of McQueen*, 493 N.W.2d 91, 92 (Iowa Ct. App. 1992)). All income that is not anomalous, uncertain, or speculative should be included when determining a party's child support obligations." *In re Marriage of Nelson,* 570 N.W.2d 103, 105 (Iowa 1997).

Here, the district court found Erik's annual salary to be $35,000. Erik testified the pay stubs entered into evidence included overtime that was limited in

nature and never guaranteed. He also testified the bonuses he receives are merit-based and unpredictable in amount and as to frequency. He provided no information to indicate his salary fluctuated on a regular basis. Thus, the argument regarding overtime and bonuses is speculative, at best.

Kathryn also argues Erik is receiving income for work he is performing for his father. She contends this income should have factored into his overall income when calculating his child support obligation.

Erik testified at trial that his parents have loaned him money for his attorney fees and have provided him rent-free housing during the pendency of this action. Erik noted that he has worked for his father in exchange for the loans, but that no money has actually been exchanged between the two of them; instead, Erik stated the money has been paid directly to his attorney.

Support available to one party from his or her family is not a factor the district court is required to consider in setting the child support award. *See In re Marriage of Drury*, 475 N.W.2d 668, 672 (Iowa Ct. App. 1991). Therefore, any financial assistance Erik received from his family should not be considered in calculating his support obligation.

Kathryn additionally argues Erik makes more than the district court found and that Erik is making more now than at the time of the divorce. Kathryn urges us to award a higher child support amount. Our review is limited to the record made in the district court. *See Richardson v. Richardson*, 79 N.W.2d 769, 771 (Iowa 1956) ("We are required, as was the trial court, to consider only evidence legally made part of the record.").

.

Kathryn further argues the district court inequitably imputed a $15,080-a-year income to her. She contends the imputing was improper and, at the very least, that the amount is too high considering she has never earned that much money. She asserts the imputed amount should not have exceeded the maximum salary she earned during a brief internship, an amount less than $10,000.

Iowa Court Rule 9.11(4) states:

> The court may impute income in appropriate cases subject to the requirements of rule 9.5. If the court finds that a parent is voluntarily unemployed or underemployed without just cause, child support may be calculated based on a determination of earning capacity. A determination of earning capacity may be made by determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earning levels in the community, and other relevant factors. The court shall not use earning capacity rather than actual earnings or otherwise impute income unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.

The district court found Kathryn was a well-educated, healthy, and able-bodied person capable of obtaining a suitable job despite her lack of formal experience, and the imputed income is based on minimum wage. We agree with the district court. Kathryn has a master's of business administration degree and testified she is in good health and does not require any ongoing medical treatments. We see no reason why she will not be able to obtain some sort of employment paying at least minimum wage.

Kathryn also alleges the district court erred in its calculations of Erik's income as it relates to the amount he pays for health, dental, and vision insurance. Kathryn avers the amount the court used did not take into

consideration the amount Erik would eventually be paying once Kathryn was removed from the policy. This argument depends upon alleged facts occurring after the record was closed. We do not consider it.

We affirm on this issue.

### B. Alimony and Spousal Support

Kathryn argues the district court inequitably denied her request for spousal support. "Alimony 'is a stipend to a spouse in lieu of the other spouse's legal obligation for support.'" *In re Marriage of Probasco,* 676 N.W.2d 179, 184 (Iowa 2004) (quoting *In re Marriage of Francis,* 442 N.W.2d 59, 62 (Iowa 1989)). Under Iowa law, alimony is not a matter of absolute right, but depends upon the circumstances of each particular case. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). Factors to be considered in awarding alimony are provided in Iowa Code section 598.21A(1) (2013), which include: (1) the length of the marriage; (2) the age and physical and emotional health of the parties, (3) the property distribution; (4) the educational level of the parties at the time of the marriage and at the time the dissolution action is commenced; (5) the earning capacity of the party seeking alimony; and (6) the feasibility of the party seeking alimony becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. *See* Iowa Code § 598.21A(1)(a)-(f).

"When determining the appropriateness of alimony, the court must consider '(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against the relative needs of the other.'" *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct App. 1997) (quoting *In re Marriage of Miller*, 524 N.W.2d 442, 445 (Iowa. Ct. App. 1994)). In the decree,

the district court held that between Erik's obligations for child support and for mortgage payments on the home until May 2015, his income would not allow for him to afford rent for a home of his own. In our consideration, we note the evidence supports that both Kathryn and Erik are both in good physical and emotional health, and both parties have the capability of becoming self-sufficient. Although Erik has a steady income stream, there is nothing to indicate Kathryn will not be able to achieve the same. Given the financial situations of both parties, it appears both parties will struggle to meet their own financial needs for the foreseeable future. Therefore, we do not believe there has been a failure to do equity in this case, and we affirm the district court's decision to not award Kathryn spousal support. *See, e.g., In re Marriage of Menning*, No. 11-1854, 2012 WL 2407699, at *2 (Iowa Ct. App. June 27, 2012) (holding where both parties have the ability to be self-supporting, despite probable mutual financial difficulties, the lack of an award for spousal support did not fail to do equity).

We affirm on this issue.

### C. Dependency Tax Exemptions and Income Tax Refunds

Kathryn next contends it was inequitable for the district court to award Erik the tax exemptions for all four children. The decree limited this award with a provision stating that once Kathryn achieved an annual salary of at least $15,080, she and Erik would evenly split the dependency tax credit. Kathryn also contends any resulting tax refunds given to Erik should be split between the parties.

"The general rule is that the parent given physical care of the child is entitled to claim the child as a tax exemption." *In re Marriage of Okland*, 699

N.W.2d 260, 262 (Iowa 2005) (citing *In re Marriage of Kerber*, 433 N.W.2d 53, 54 (Iowa Ct. App. 1998)). "Iowa district courts have the authority to award dependent child tax credits to the noncustodial parent to achieve an equitable resolution in a dissolution." *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996). Factors the court are to consider include whether allocating the exemption to the noncustodial parent would "free up more money for the dependent's care," or whether it would inequitable to allocate the exemption to the custodial parent because they would benefit the least from receiving it. *Okland*, 699 N.W.2d at 260, 269.

At the time of the decree, Kathryn was not employed. The decree specifically holds that if and when Kathryn obtains full-time employment earning at least $15,080 annually, she and Erik will split the tax dependency credits. Under the circumstances at the time the decree was entered, it was equitable to award the tax dependency credits to Erik.

Kathryn additionally asserts that any resulting refunds given to Erik should be split between the parties. However, she does not provide us with any guidance as to her actual assertion or why the award itself was inequitable. Iowa Rule of Appellate Procedure 6.903(2)(g)(3) requires that appellant's contentions and the reasons for those contentions be supported with citation to the legal authority relied on and reference to relevant sections of the record. "Failure to cite authority in support of an issue may be deemed waiver of that issue." Iowa R. App. P. 6.903(2)(g)(3). As a general rule, "we will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner,* 548

N.W.2d 864, 876 (Iowa 1996). In most cases the appellant's "random mention of an issue, without analysis, argument or supporting authority is insufficient to prompt an appellate court's consideration." *State v. Mann,* 602 N.W.2d 785, 788 n. 1 (Iowa 1999).

We affirm on this issue.

**D. Sale of Marital Home**

Kathryn next contends the district court did not do equity when it ordered the sale of the marital home. Specifically, she maintains the sale of the home will put her at a standard of living not enjoyed by her and the children during the marriage. She also argues that having to move to a different home will compromise her and the children's health as the marital home was specifically designed, prepared, and maintained with the avoidance of molds in mind.

The testimony at trial indicated neither party wished to retain ownership of the home. However, Kathryn did request Erik pay spousal support in the amount of $641.00 a month—the amount equal to the monthly mortgage payment—for a period of six years, and in turn she would re-pay Erik that amount apparently as rent. In addition, Kathryn also requested she be allowed to remain in the home until the youngest child reached eighteen years of age—sixteen years from the date of the decree. The district court found in the decree that it could not require Erik to own the home for sixteen years while Kathryn remained in possession of it.

Therefore, because neither party desired to own the home, the district court ordered the house be sold and ordered Erik to continue making the mortgage payments until May 31, 2015. If the house had not sold by that date,

the court ordered the parties to split any remaining mortgage payments, and upon sale, any surplus or deficiency in the mortgage balance was to be split evenly between the parties.

We find the order to sell the marital home was fair and equitable. Considering the circumstances of the parties, there is no reason not to sell the home. Both parties indicated they had no desire to own the home, and despite Kathryn's desire to stay in the home with the children, her present financial situation will not allow her to make such payments. Additionally, we agree with the district court that it would not be fair and equitable to require Erik to retain ownership of the home. *See* Iowa Code § 598.21(5)(g) ("The court shall divide all property . . . equitably between the parties after considering . . . [t]he desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children . . . ."). The decree awarded Kathryn a reasonable period of time to remain in the home with the children following the entry of the decree with Erik's continued payments of the mortgage; we find this equitable. Additionally, we find the splitting of the proceeds or remaining liability upon sale is fair and equitable.

We affirm the district court's ruling and find that it was equitable to order the sale of the marital home.

### E.  Erik's Parenting Time

Next, Kathryn argues Erik has not followed the court-ordered parenting schedule, and in doing so, he has minimized his financial obligation to the children. Kathryn argues this has resulted in her having to cover the cost of food and babysitting during his missed visitation periods. This argument involves

facts alleged to have occurred after the record was closed. We do not consider it. *See Richardson*, 79 N.W.2d at 771.

### F.    Extracurricular and Daycare Expenses for Children

Kathryn next asserts the district court failed to do equity when it ordered she and Erik equally split the costs of the children's extracurricular activities and daycare expenses. Specifically, Kathryn argues that if uncovered medical expenses are to be split sixty-nine percent for Erik and thirty-one percent for herself so should the expenses for the children's daycare and activities.

"The child support guidelines are designed to calculate an amount of funds that will 'cover the normal and reasonable costs of supporting a child.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 685 (Iowa 2013) (citing *Okland*, 699 N.W.2d at 268). In setting child support amounts according to the guidelines, our courts contemplate "'the normal needs of a child, except for medical support and postsecondary education expenses.'" *Id.* at 686. Our courts will deviate from the guidelines when the expenses are unique and were not contemplated by the guidelines. *See id.* "[E]xtracurricular activities . . . fall squarely within the realm of childrearing expenses contemplated by our guidelines." *Id.* Additionally, "daycare is one of the 'normal and reasonable' costs of supporting a child" and "is an expense contemplated by the child support guidelines as a normal cost of raising a child." *See, e.g., In re Marriage of Williams*, No. 10-0049, 2010 WL 5394836, at *3 (Iowa Ct. App. Dec. 22, 2010).

Because the expenses Kathryn is requesting are normal and reasonable to raising children and have been contemplated by the guidelines, we find no reason to deviate from the guidelines. We affirm on this issue.

### G. Constitutional, Mental Health, and Discovery Issues

Kathryn asserts various violations of her due process rights and denial of equal judicial treatment in violation of the Equal Protection Clause. She additionally avers claims relating to improper inquiry into various mental and physical exams of the parties and Erik's failure to provide adequate responses to discovery. Because we find these issues were not properly preserved, we decline to address them. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (stating error preservation rules require an issue to be both raised and decided before we will consider it on appeal); *see also In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

### H. Attorney's Fees

Finally, Erik requests his attorney fees on appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *See In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa Ct. App. 1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *See In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa Ct. App. 1981). With these considerations in mind, we split costs equally and decline to award attorney fees.

**AFFIRMED.**